**Iris McKINNEY, Appellant,**

v.

**Honorable Elizabeth DOLE, Secretary of Transportation, *et al.***

No. 84–5337.

United States Court of Appeals, District of Columbia Circuit.

Argued March 7, 1985.

Decided July 2, 1985.

Charles G. Aschmann, Jr., Alexandria, Va., for appellant.

Daniel Bensing, Sp. Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and R. Craig Lawrence, Scott T. Kragie, Royce C. Lamberth, and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before WRIGHT, MIKVA and STARR, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

Opinion concurring in part and dissenting in part filed by Circuit Judge STARR.

J. SKELLY WRIGHT, Circuit Judge:

In *Bundy v. Jackson*, 641 F.2d 934 (D.C. Cir.1981), and *Vinson v. Taylor*, 753 F.2d 141 (D.C.Cir.1985), this court held that sexual harassment of a female employee by her male supervisor could, without any con-crete adverse employment action having been taken against her, constitute a violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e *et seq.* (1982). In those cases the sexual harassment complained of consisted of sexual advances and other sexual importunings by the male supervisors in question. This case presents a variation of that factual situation. Specifically, it poses the question whether a physically aggressive but not explicitly sexual act by a male supervisor against a female employee may constitute part of a prohibited pattern of sexual discrimination. We hold that it may.

Based on that holding, we hold that the District Court here erred in granting summary judgment for the employer defendant on the plaintiff's sex discrimination/sexual harassment claim. We also hold that the District Court erroneously granted the defendant's motion for summary judgment on the plaintiff's reprisal claim. We then affirm, however, the District Court's disposition of the remaining claims—the age discrimination claim and the claim of sex discrimination in the provision of legal services.

## I. BACKGROUND

Iris N. McKinney, the plaintiff-appellant here, is a GS–13 Budget Analyst with the Federal Aviation Administration (FAA). She was born on November 26, 1936. During 1982 she filed four charges of age and sex discrimination against her supervisors and the FAA.

Initially, on April 30, 1982, she filed a written administrative complaint with the FAA Equal Employment Opportunity (EEO) officer, alleging that she had been illegally discriminated against on the basis of her sex, *see* 42 U.S.C. § 2000e–16(a),[1] and on the basis of her age, *see* 29 U.S.C. § 633a(a) (1982).[2]

---

1. 42 U.S.C. § 2000e–16(a) provides: "All personnel actions affecting employees * * * in executive agencies * * * shall be made free from any discrimination based on race, color, religion, sex, or national origin."

2. 29 U.S.C. § 633a(a) provides: "All personnel actions affecting employees * * * who are at least 40 years of age * * * in executive agencies * * * shall be made free from any discrimination based on age."

With respect to the sex discrimination claim, Ms. McKinney generally alleged continuing verbal abuse and sexual harassment by Mr. Charles Whitfield, her second-line supervisor at the FAA.[3] Although it is unclear from the record before us precisely what incidents of verbal abuse she was referring to,[4] the sexual harassment allegedly included one incident on July 3, 1975, when Mr. Whitfield allegedly exposed himself to Ms. McKinney, and another on March 21, 1981, when he allegedly rubbed up against her and asked her for sexual favors. *See* Plaintiff's Responses to Defendants' First Set of Interrogatories, filed October 24, 1983, Answer 3. *See also* Deposition of Iris McKinney, filed February 26, 1985, at 15–17.[5] Ms. McKinney also alleged that William A. Plissner, Mr. Whitfield's supervisor, had participated in this continuing sexually discriminatory treatment by sending Ms. McKinney a letter of warning and a proposed suspension letter. *See* Complaint, filed April 8, 1983, at 3–4.

The culmination of this treatment, and the incident detailed in the complaint, was an assault by Mr. Whitfield that was alleged to have occurred on February 25, 1982.[6] On that date Ms. McKinney had met with Mr. Whitfield in his office, apparently to allow Mr. Whitfield to discuss a temporary lay-off without pay necessitated by an FAA funding shortage. Ms. McKinney was to sign a letter acknowledging the "furlough" and the fact that she had been advised of her rights relating to this fur-lough. At the meeting in Mr. Whitfield's office, Ms. McKinney signed the letter. Having done so, she started to leave the office. The letter dropped to the floor. Mr. Whitfield then ordered Ms. McKinney to retrieve the letter, but Ms. McKinney fled to her own office without doing so. Mr. Whitfield pursued her into her office and there either fired her or threatened to fire her. According to Ms. McKinney, she attempted to leave the office but Mr. Whitfield forcefully prevented her from doing so by grabbing her arm and twisting it. She eventually escaped, but not before, as she alleges, she sustained substantial physical injury.[7]

With respect to the age discrimination claim, Ms. McKinney alleged in this same April 30, 1982 administrative complaint that she had been prevented from obtaining a promotion by Mr. Whitfield and others within the FAA. Specifically, her allegations are directed toward a promotion vacancy that was first announced in March of 1981.[8] At that time she applied for the position and was apparently included on a "highly qualified" list. Then, she alleged, her SF–171 (the government personal qualifications form that must accompany any government personnel decision) disappeared. She alleged that this disappearance was brought about intentionally, probably by Mr. Whitfield, for the purpose of ensuring that she would not be considered for the promotion. Before any selection was made, the vacancy was cancelled in

---

3. Because these complaints are not themselves in the record before us, we rely for a description of their contents on the District Court's summary of those contents and on Ms. McKinney's complaint in the District Court repeating the prior allegations.

4. Ms. McKinney's answers to the defendants' interrogatory requesting specific information on these allegations apparently were contained in documents attached to her formal answers. Those documents, however, are not included in the record sent to us by the District Court.

5. Ms. McKinney stated that these allegations were included in an affidavit she prepared in March 1982 for EEO Investigator Hector Clone. *See* McKinney Deposition at 34.

6. This alleged assault was also the subject of another action by Ms. McKinney—a common law assault and battery action against Mr. Whitfield. *See McKinney v. Whitfield*, 736 F.2d 766 (D.C.Cir.1984) (holding that, on facts alleged, Mr. Whitfield was not entitled to immunity from suit for assault on employee to compel that employee to comply with orders since such use of physical force fell beyond the legitimate authority of a federal supervisor).

7. The twisted arm allegedly exacerbated an earlier, unrelated injury. *See McKinney, supra* note 6, 736 F.2d at 767 & n. 5.

8. At this time Ms. McKinney was 44 years old—clearly within the age class protected by 29 U.S.C. § 633a(a).

June 1981. Thereafter another, younger, individual was selected to fill the position on a temporary basis.[9] Ms. McKinney believed that this person had been pre-selected for the vacancy. When the job was reopened in October 1981, Ms. McKinney did not apply, allegedly because she knew that the other individual had already effectively been selected for the position and because Mr. Whitfield had ordered her not to apply. The younger employee was officially selected for the vacancy in early January 1982.

On July 14, 1982 Ms. McKinney filed a second administrative complaint. In this complaint she noted that, in previous grievance proceedings with the FAA and with respect to her charges of assault and battery against Mr. Whitfield stemming from the February 25, 1982 incident, the government had provided Mr. Whitfield with legal representation. She also noted that the government had refused to provide her with legal representation. She complained that this disparate treatment constituted sex discrimination.

Finally, on September 1, 1982, Ms. McKinney filed a third administrative complaint. In this complaint she focused on her transfer from the FAA Budget Review & Reports Staff to the FAA Advanced Automation Program Office in August of 1982, which she alleged to have been in retaliation for her filing of the earlier discrimination complaints. It appears that this transfer had occurred in violation of an internal FAA regulation, which provides for no transfers while an Equal Employment Opportunity Commission (EEOC) investigation is ongoing. *See* DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMIN-ISTRATION, *Equal Opportunity in FAA Employment,* Order 1400.8, ¶ 810.[10] And, although not disputing that she had previously requested a transfer to get away from Mr. Whitfield and that an FAA Grievance Examiner (responding to an earlier internal grievance filed by Ms. McKinney) had recommended such a transfer, Ms. McKinney alleged that the transfer was actually made in retaliation for her earlier EEO complaints. She also noted that she had objected to it. It further appears that this transfer was to a position with the same pay and of the same grade as her previous position. Ms. McKinney, however, alleged that the new position was temporary and in an area with which she was not very familiar, and that her job security and chances of promotion were consequently significantly lower than they would have been had she stayed in her previous job, which was permanent and in which she was proficient.

After 180 days had passed without formal agency action being taken on her administrative complaints, Ms. McKinney filed suit in the District Court, alleging the same discriminatory incidents that she had set forth in those complaints. After discovery, the defendant moved to dismiss the suit for failure to state a claim under Fed. R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. In conjunction with this motion the defendant submitted to the District Court a document labelled "Statement Of Material Facts As To Which There Is No Genuine Issue," filed January 6, 1984 (Statement). The plaintiff responded with an opposition to the motion. The District Court then

---

**9.** Carol Carmody, the woman selected to fill the position temporarily (and eventually on a permanent basis) was born on August 14, 1942. *See* Defendants' Response to Plaintiff's First Set of Interrogatories. Thus she was six years younger than Ms. McKinney and less than 40 years old at the time these events allegedly occurred.

**10.** Order 1400.8, ¶ 810 provides in relevant part: Any decision which constitutes an adverse or disciplinary action or any change in duty station, or job assignment, or supervision of an employee who has contacted an EEO counselor or who has filed a discrimination complaint must be coordinated with the EEO Officer, through the field EEO officer, prior to being effected. When advised that such action is proposed, the EEO Officer shall review the proposed action and the recommendation of the field EEO officer and determine whether the action should be taken as proposed. Consultation is required on all such actions which are initiated after the employee has contacted an EEO counselor. * * *

granted the defendant's motion, dismissing Ms. McKinney's claims with prejudice. She now appeals.

## II. STANDARD OF REVIEW

The first question we must resolve in reviewing the District Court's decision is what standard governs our review. This depends on whether the dismissal of the claims by the District Court was summary judgment for the defendant or simply a Rule 12(b)(6) dismissal for failure to state a claim. The record, however, is not clear on this point.

The defendant's motion was styled as an alternative motion to dismiss for failure to state a claim and for summary judgment. And the District Court's opinion is unclear as to whether it was dismissing Ms. McKinney's complaint for failure to state a claim or granting summary judgment for the defendant because of the proven absence of any genuine issue of material fact. For example, although the District Court indicated in its opinion that it had reviewed the entire record, *see* Memorandum Order filed April 19, 1984 (Mem.Ord.), at 3, it also stated, with respect to at least two of Ms. McKinney's claims (the sexual harassment and reprisal claims), that it was dismissing them for failure to state a cause of action. *See id.* at 4, 5–6. Further, the District Court simply ordered that the defendant's motion in the alternative be granted and that the action be dismissed; it did not specify which of the alternative motions it was granting. *See id.* at 7.

■ Regardless of this lack of clarity, it is evident that the District Court considered materials outside the pleadings in dismissing the case. Addressing such a situation, Rule 12(b) states that "[i]f, on a [Rule 12(b)(6) motion], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as

one for summary judgment and disposed of as provided in Rule 56." *See also Carter v. Stanton,* 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) (*per curiam*); *Tele-Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1334 (D.C. Cir.1985). And this court has held that, as long as the relevant notice requirements have been met, [11] we will treat a dismissal where a District Court considered matters outside the pleadings as a summary judgment even if the District Court itself did not clearly do so. *See id. See also Mazaleski v. Treusdell,* 562 F.2d 701, 708 (D.C.Cir.1977). In this case it is evident that the applicable notice requirements were met and that no unfairness occurred: In fact, the plaintiff herself treated the motion as one for summary judgment. Thus we properly review the District Court's decision as summary judgment for the defendant, regardless of how the District Court itself styled it.

Rule 56(c) states that a District Court may grant a motion for summary judgment if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is now long established that summary judgment is proper only when the moving party demonstrates the absence of any genuine and material factual issue. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Catrett v. Johns-Manville Corp.,* 756 F.2d 181, 184 (D.C.Cir. 1985); *Kreuzer v. American Academy of Periodonotology,* 735 F.2d 1479, 1495 (D.C. Cir.1984).

■ The burden on a party moving for summary judgment is affirmative: "The party seeking summary judgment has the burden of showing there is no genuine issue of material fact, even on issues where the other party would have the burden of proof at trial, and even if the opponent

---

11. *See Tele-Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1334 (D.C.Cir. 1985). Rule 12(b) requires that, where a motion to dismiss is converted to a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material

made pertinent to such a motion by Rule 56." Further, Rule 56(c) requires that "[t]he motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing [on the motion]."

presents no conflicting evidentiary matter." *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980). *See also Catrett, supra,* 756 F.2d at 184–185 n. 10 (citing cases). That is, the moving party must present affirmative evidence of facts that, if true, would compel a judgment for that party. For example, mere denial by a moving defendant of the allegations made by a nomoving plaintiff in his or her complaint is not enough. *See* 10A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2727 at 131 & n. 11 (2d ed. 1983).

In assessing whether a party moving for summary judgment has met his or her burden, a court must view all inferences to be drawn from underlying facts in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*); *Kreuzer, supra,* 735 F.2d at 1495; *Williams v. WMATA,* 721 F.2d 1412 (D.C.Cir.1983). In fact, " 'the record must show the movant's right to [summary judgment] "with such clarity as to leave no room for controversy," and must demonstrate that his opponent "would not be entitled to [prevail] under any discernible circumstances." ' " *Id.* at 1415 (*quoting Nat'l Ass'n of Gov't Em-*

*ployees v. Campbell,* 593 F.2d 1023, 1027 (D.C.Cir.1978) (*quoting Nyhus v. Travel Management Corp.,* 466 F.2d 440, 440 (D.C.Cir.1972) (footnote omitted)). *See also Kreuzer, supra,* 735 F.2d at 1495. Summary judgment " 'should be awarded only when the truth is quite clear.' " *Weiss v. Kay Jewelry Stores, Inc.,* 470 F.2d 1259, 1262 (D.C.Cir.1972) (footnote omitted).

 If the moving party meets this burden, then and only then is the nonmoving party required to proffer evidence that contradicts the moving party's showing and that proves the existence of a genuine issue of material fact. *See Catrett, supra,* 756 F.2d at 184. If the moving party does not meet its burden, however, the nonmoving party is, without making any showing, entitled to a denial of the motion. *See Adickes, supra,* 398 U.S. at 161, 90 S.Ct. at 1610. Although it is risky for a nonmoving party to fail to proffer evidence in response to the moving party's showing, such a failure does not automatically mandate granting of the motion. *See id.*[12]

This standard for determining whether a moving party is entitled to summary judgment applies equally at trial and on appeal. *See Williams, supra,* 721 F.2d at 1415 (citing cases). Consequently, our review of a District Court's grant of summary judg-

---

**12.** In addition to the requirements of Fed.R. Civ.P. 56, parties in the District Court here must meet the formal requirements of Rule 1–9(i) of the Rules of the United States District Court for the District of Columbia. That rule provides:

With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure there shall be served and filed, in addition to the statement of points and authorities * * *, a statement of the material facts as to which the moving party contends there is no genuine issue, and shall include therein references to the parts of the record relied on to support such statement. In determining a motion for summary judgment, the court may assume that the facts as claimed by the moving party in his statement of material facts are admitted to exist except as and to the extent that such facts are controverted in a statement filed in opposition to the motion.

Read literally, the provision of the local rule that "the court may assume that the facts as claimed by the moving party * * * are admitted to exist" except as controverted by the opposing

party could be taken to apply to facts claimed but inadequately supported by the moving party. Given the mandate of Fed.R.Civ.P. 83 that District Court rules must be consistent with the federal rules, however, this provision of the local rule must be interpreted to mean that facts claimed *and adequately supported* by the moving party may be assumed by the District Court unless controverted by the opposing party.

This interpretation should not be taken as a departure from our prior decisions emphasizing that parties have a firm obligation to comply with the local rule's requirements, which are aimed at giving notice of the relevant evidence in the record to the District Court and to the opposing party. *See, e.g., NRM Corp. v. Hercules, Inc.,* 758 F.2d 676, 680 (D.C.Cir.1985) (noting that where party opposing motion for summary judgment never even referred to evidence in the record that would show that genuine factual issue existed, party could not raise that issue for the first time on appeal). We note simply that in interpreting the requirements and applications of the local rule the principles of the federal rules must ultimately prevail.

**1136**

ment must track the analysis delineated above for Ms. McKinney's four discrimination claims: (1) sexual harassment, (2) age discrimination, (3) sex discrimination in provision of legal representation, and (4) reprisal.

### III. SEX DISCRIMINATION/SEXUAL HARASSMENT CLAIM

#### A. *Background*

In her complaint in the District Court Ms. McKinney alleged that

[i]n the [administrative] discrimination complaint of April 30, 1982, Plaintiff stated that she had been sexually harassed by the Defendant, Charles A. Whitfield, and that, in order to protect Mr. Whitfield from any charges of misconduct, the Defendant, William Plissner, Director of the Office of Budget, had sent plaintiff a letter of warning and a proposed suspension letter. Plaintiff also stated that Mr. Whitfield had verbally abused her on several occasions. Plaintiff reasserts these allegations and states that this conduct constituted sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended * *. * * *

Complaint at 3–4.

In Defendant's Statement Of Material Facts As To Which There Is No Genuine Issue the defendant responded to this allegation by noting that the specific incident

of sexual harassment/discrimination referred to here was the alleged assault and battery of Ms. McKinney by her supervisor Mr. Whitfield. The defendant contended with respect to this incident that Ms. McKinney had not suggested that there were any sexual connotations to this incident or that it comprised "any attempt to obtain or to coerce plaintiff to engage in any form of sexual act." Statement at 2, ¶ 3. The defendant then noted that the complaint alleged a warning letter issued to Ms. McKinney by Mr. Plissner and verbal abuse of Ms. McKinney by Mr. Whitfield. With respect to these statements the defendant noted that Ms. McKinney, when asked, failed to identify any instance of verbal abuse *within the 30 days prior to the filing of her first administrative complaint. See id.* at 2, ¶ 6.[13] (The defendant did *not* assert that Ms. McKinney had not identified specific instances of verbal abuse that allegedly occurred *before* that time.[14])

Based on these asserted facts, the defendant argued that any incidents of verbal abuse could not form the basis for a timely complaint. In addition, the defendant contended that Ms. McKinney's claim of sexual harassment failed to state a claim upon which relief could be granted because there were no sexual overtones to the alleged assault incident and because there was a "legitimate, nondiscriminatory reason" for Mr. Whitfield acting as he had.[15] What

---

**13.** It is clear that Ms. McKinney first filed a written complaint with the EEO officer on April 30, 1982. It also appears, however, that she complained orally to the EEO officer some time before that date. Although the defendant (without reference to the record) noted in one place that the initial contact occurred on April 24, 1982, and in another that it occurred on April 24, 1983, *see* Memorandum in Support of Defendant's Motion to Dismiss at 9, the only concrete indication in the record of when the initial contact actually occurred is Ms. McKinney's statement in response to the defendant's interrogatories that it occurred on March 24, 1982. *See* Plaintiff's Responses to Defendants' First Set of Interrogatories, Answer to Defendants' Question 1. Given that the defendant did not assert that Ms. McKinney's sex discrimination claim relating to the February 25, 1982 incident was untimely, we will assume for purposes of this opinion that it was timely. *See Zipes v. Trans*

*World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (filing of charge not jurisdictional and thus subject to waiver).

**14.** As noted above, *see* note 4 *supra,* given the state of the record before us, we cannot determine what incidents of verbal abuse Ms. McKinney actually did identify. We note again, however, that Ms. McKinney did specify previous incidents of sexual harassment, including sexual advances made by Mr. Whitfield in 1975 and 1981. *See* text accompanying note 5 *supra.*

**15.** In asserting the existence of a "legitimate, nondiscriminatory reason" for Mr. Whitfield's actions, the defendant apparently referred to the evidentiary structure for proving discrimination set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101

that reason might be, however, was not elucidated. *See* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, filed January 6, 1984, at 11–12.[16] Overall, therefore, the defendant's argument was apparently that, since Ms. McKinney had alleged no incidents of sex discrimination/sexual harassment that fell within the correct time frame (since the verbal abuse incidents were earlier and the assault was legally insufficient), her sex discrimination/sexual harassment claim was not timely.

In response to the defendant's motion and statement Ms. McKinney filed an opposition to the motion for summary judgment. In this opposition she asserted that

Mr. Whitfield's physical assault of Miss McKinney was obviously sexually motivated, because she had thwarted his earlier sexual advances, such as the one on March 20, 1981.[17] In addition, sex discrimination is evidenced by disparate treatment, not necessarily or solely by lustful acts. It is equally obvious that Mr. Whitfield would not have assaulted a man in the manner he assaulted Miss McKinney (Whitfield Deposition, pgs. 22, 23).[18] Because Miss McKinney was treated differently than a man would have been treated and because the assault culminated a period of sexual coercion, the assault is replete with sexual harassment.

S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under those cases, after a plaintiff presents a *prima facie* case of discrimination a defendant must produce adequate evidence that it acted for a "legitimate, nondiscriminatory reason." Thereafter, a plaintiff must carry his or her burden of proving discriminatory intent, either directly or indirectly by showing that the defendant's advanced reason was a pretext, in order to prevail.

**16.** The defendant did cite the determination of the District Court in the related common law assault case that Mr. Whitfield had acted within his authority in physically preventing Ms. McKinney from leaving her office before the issue was resolved. *See* Memorandum in Support of Defendant's Motion to Dismiss at 11. As noted above, however, this determination has since been overturned on appeal. *See* note 6 *supra*.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed January 30, 1984, at 4–5.

In ruling on the defendant's motion the District Court noted that "[p]laintiff has failed to substantiate her characterization of the altercation with her supervisor as 'sexual harassment,' which is defined as '[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature....' 29 C.F.R. § 1604.11(a)." Mem.Ord. at 3. The District Court went on to observe that Ms. McKinney had not substantiated her allegation that the other incidents were sexually based and that, with respect to the alleged incidents of verbal abuse, she had not even specified particular instances. In conclusion, the District Court stated that "[w]hether labeled as a conventional claim for sexual discrimination under Title VII or as one for specific sexual harassment, plaintiff has completely failed to allege facts, by affidavit or otherwise, which would create a genuine issue of discrimination based on sex." *Id.* at 4. Based on this analysis, the District Court concluded that the plaintiff had not stated a cause of action with respect to this claim.

### B. *Analysis*

On this record, the question before us is whether summary judgment for the defendant was proper. The defendant's ar-

In addition, we do not see that a determination that a supervisor acted within his authority necessarily means that he acted for a nondiscriminatory reason. For example, a determination that a supervisor could, within his or her authority, fire an employee does not mean that in a particular case the decision to fire an employee was not discriminatory.

**17.** Although no citation to the record was included with this statement, this reference is apparently to one of the incidents identified by Ms. McKinney in her deposition and her answers to the defendant's interrogatories. *See* note 13 *supra*.

**18.** This reference is to statements by Mr. Whitfield that he had never been involved in physical violence with another employee or, in fact, with anyone.

gument in support of its motion was apparently something like this: Given that the alleged assault by Mr. Whitfield on Ms. McKinney was simply violent and did not include overt sexual advances or suggestions, that assault, even if it occurred as alleged by Ms. McKinney, cannot constitute sexual discrimination. And, since none of the other incidents specifically alleged occurred within 30 days of the time the complaint was filed, there is no timely and sufficient allegation of sex discrimination.

The District Court's analysis, however, seemed to focus on the idea that Ms. McKinney, by not alleging specific incidents with explicitly sexual overtones, had failed to "create a genuine issue of discrimination based on sex," Mem.Ord. at 4, and that she had never substantiated her allegations of verbal abuse *at all.*

We believe the brief analysis suggested by the District Court's opinion incorporates two legal mistakes. First, the District Court appeared to place the burden of showing that there *was* an issue of material fact on the plaintiff. As noted above, however, the burden is clearly on the moving party—here the defendant—to show that there *is not* an issue of material fact. Only where the moving party carries that burden does the burden shift to the nonmoving party to show that there *is* a genuine factual issue. Second, the District Court appears to have assumed that an incident of physical force toward an employee by a supervisor cannot constitute sexual discrimination or harassment unless it is for the purpose of obtaining sexual favors or is otherwise blatantly sexually oriented. This assumption, however, is legally flawed.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex * * * [.]" 42 U.S.C. § 2000e–2(a)(1).[19] In previous cases dealing with sexual harassment this court has noted that the relevant legal question is whether such harassment comprised a "condition of employment." If it does—that is, if it is sufficiently patterned or pervasive to comprise a condition, *see Bundy, supra,* 641 F.2d at 943 n. 9—and if it is apparently caused by the sex of the harassed employee—that is, if "[*b* ]*ut for* her womanhood," *id.* at 942 (emphasis in original), the harassment would not have occurred, then such harassment violates Title VII.

■ We have never held that sexual harassment or other unequal treatment of an employee or group of employees that occurs because of the sex of the employee must, to be illegal under Title VII, take the form of sexual advances or of other incidents with clearly sexual overtones. And we decline to do so now. Rather, we hold that any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII.[20]

19. Although the specific statutory provision that covers federal employees, 42 U.S.C. § 2000e–16(a), is worded differently, *see* note 1 *supra,* we have held that "Title VII places the same restrictions on federal and District of Columbia agencies as it does on private employers." *Bundy v. Jackson,* 641 F.2d 934, 942 (D.C.Cir.1981) (*citing Barnes v. Costle,* 561 F.2d 983, 988 (D.C.Cir. 1977)).

20. The District Court apparently concluded that, because the alleged assault here did not incorporate sexual advances or exhibit other explicit sexual overtones, it did not fall within the ambit of Title VII. The District Court cited, in support of this proposition, the EEOC regulation defining and prohibiting sexual harassment. That regulation provides:

> Harassment on the basis of sex is a violation * * * of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct

This conclusion is buttressed by decisions in other circuits regarding the "conditions of employment" provision of the statute. Several courts have held that differential treatment of employees on account of their sex, even if the treatment is not obviously related to the characteristic of sex, violates the "conditions of employment" provision of Title VII. For example, forcing female employees to wear uniforms while allowing male employees to wear their own suits was held by the Seventh Circuit to violate Title VII. *See Carroll v. Talman Federal S & L Ass'n,* 604 F.2d 1028, 1032–1033 & n. 13 (7th Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1316, 63 L.Ed.2d 762 (1980). *See also Harrington v. Vandalia-Butler Board of Educ.,* 585 F.2d 192, 194 n. 3 (6th Cir.1978), *cert. denied,* 441 U.S. 982, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979) (inferior locker room facilities for female gym teachers is illegal condition of employment). *Cf. Firefighters Institute for Racial Equality v. City of St. Louis,* 549 F.2d 506, 514–515 (8th Cir.), *cert. denied,* 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977) (segregated eating clubs condoned by employers create prohibited discriminatory condition of employment).

■ Thus a continuing pattern of behavior that differentiates a particular employee or group of employees because of sex violates the equal "conditions of employment" requirement of Title VII. Clearly, then, if a supervisor consistently uses physical force toward an employee because of that employee's sex, the use of such force

may, if pervasive enough, form an illegal "condition of employment." So too a pattern of mixed sexual advances and physical force may be illegally discriminatory if based on the employee's sex.[21] Consistently disparate treatment, however, need not take the form of actual physical assault and/or battery in the classic sense. A pattern of threatened force or verbal abuse, if based on the employee's sex, may be illegally discriminatory. In fact, any disparate treatment, even if not facially objectionable, may violate Title VII.

With these legal principles firmly in mind, we now turn to the question whether the District Court's resolution of the specific question in this case—whether the defendant had carried its burden of showing that no genuine issue of material fact existed—was correct. The plaintiff alleged sexual harassment and sex discrimination by her supervisors. Specifically, she alleged the assault by Mr. Whitfield, the letter reprimand from Mr. Plissner, and other assorted incidents of verbal abuse and sexual harassment.[22] In response to these allegations, the defendant asserted simply that the assault incident could not constitute sexual harassment because it was not overtly sexual and that the other incidents had not been specifically alleged as having taken place within the 30 days before Ms. McKinney filed her first administrative complaint.

The defendant did not present any evidence either that the alleged assault did

has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a) (1984).

It is true that this regulation emphasizes explicitly sexual behavior. And it is true that we owe deference to the EEOC interpretation of the statute. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 433–434, 91 S.Ct. 849, 854–855, 28 L.Ed.2d 158 (1971). But even assuming that harassment that is caused by an employee's sex but that is not overtly sexual does not fall within the EEOC's definition of sexual harassment, we do not believe that an EEOC regulation that identifies certain activities as prohibited by Title VII can or should be taken to mean that any other

activities are allowed. Thus we look directly to the words of the statute for guidance.

**21.** It is true that proving that a pattern of physical force is illegally discriminatory might be significantly more difficult than proving that a pattern of explicitly sexual advances is illegally discriminatory because the latter are more obviously caused by the sex of the employee. That, however, is simply an evidentiary problem going to one factual component of discrimination.

**22.** She did not allege knowledge by her employer of these practices on the part of her supervisor. *Vinson v. Taylor,* 753 F.2d 141 (D.C.Cir. 1985), however, made clear that such knowledge is not necessary for the employer to be liable under Title VII.

not occur or that it would have occurred regardless of Ms. McKinney's sex. Nor did the defendant present any evidence that the reprimand from Mr. Plissner was not caused by Ms. McKinney's sex, or that no incidents of discriminatory verbal abuse or other incidents of sexual harassment had occurred.

 In fact, the defendant's entire statement boils down to an argument that assault cannot be sexually discriminatory if it is not explicitly sexual and that the plaintiff did not adequately substantiate her other claims. The first argument we have already rejected.[23] The second is clearly faulty under the standards for summary judgment discussed previously. It was the defendant's responsibility to show that there was no genuine factual issue; assertions that the plaintiff did not submit adequate evidence are not enough. Thus the defendant has not met its burden of demonstrating the absence of a dispute over any material facts and summary judgment for the defendant was improper.[24] We therefore reverse the summary judgment for the defendant on this issue.[25]

## IV. AGE DISCRIMINATION CLAIM

As described above, Ms. McKinney's age discrimination claim is based entirely on a series of incidents surrounding a job promotion for which she was eligible but which was awarded to a younger individual. Ms. McKinney alleges a variety of discriminatory actions aimed at preventing her from attaining the promotion, but no one disputes that the latest of these actions was the final award of the promotion in January 1982. *See* Statement at 3, ¶ 11; Defendant's Exhibit No. 17, attached to Memorandum in Support of Defendant's Motion to Dismiss.[26]

Based on this date, the defendant argues that Ms. McKinney's age discrimination claim was not filed in a timely fashion. In support of this argument the defendant noted that a plaintiff alleging a violation of the Age Discrimination in Employment Act (ADEA) has two possible paths he or she may follow to get into court. First, he or she can sue directly in the District Court. Such a suit, however, must be brought within 180 days of the allegedly unlawful practice and must be preceded by a notice filed at least 30 days earlier with the EEOC. *See* 29 U.S.C. § 633a(d). The defendant noted that Ms. McKinney filed no such notice here and that the suit (filed April 8, 1983) was not filed within 180 days of the last allegedly discriminatory action based on age. The plaintiff has not disputed these statements.

Alternatively, however, an ADEA plaintiff may first attempt to obtain administrative redress for his or her alleged injuries and then, if those attempts prove fruitless,

**23.** With that legal argument rejected, the defendant's timeliness contention drops out. For, given that the complaint was filed in a timely manner with respect to the alleged assault and that Ms. McKinney's complaint indicated that that assault was part of a pattern of harassment, her complaint was timely with respect to the entire alleged pattern of discrimination. *See Milton v. Weinberger,* 645 F.2d 1070, 1074–1077 (D.C.Cir.1981).

**24.** Because we determine that the defendant never met its initial summary judgment burden here, we need not reach the issue whether Ms. McKinney's response to the motion would have been enough to establish the existence of a genuine issue of material fact.

**25.** We note that, although relief for this type of a violation of Title VII can take the form only of declaratory or injunctive relief ordering the defendants to cease their discriminatory behavior, *see Bundy, supra* note 19, 641 F.2d at 946 n. 12,

we do not believe that—given our ruling on Ms. McKinney's reprisal claim—this claim should be considered moot. That is, given that we hold that Ms. McKinney's reprisal claim was also improperly disposed of by the District Court, we recognize that one possible type of relief she might obtain if she eventually prevails on that claim is reinstatement. If that were to occur, this claim for injunctive relief would retain its vitality.

We note as well that Ms. McKinney, should she eventually prevail on either claim, may be entitled to attorney's fees. *See* 42 U.S.C. § 2000e–5(k).

**26.** The selection document is dated January 8, *1981,* but the year appears to be incorrect. (The list of persons eligible for the opening was dated December 8, 1981.) *See also* appellant's brief at 8.

sue in the District Court. Under this approach the plaintiff must file an administrative complaint (*i.e.*, bring the complaint to the attention of the agency's EEO counselor) within 30 days of the date of the allegedly unlawful act. *See* 29 C.F.R. § 1613.214(a)(i). If, after the administrative procedures for resolving ADEA complaints are completed, the plaintiff is not satisfied with the result, he or she may then sue in court. *See* 29 U.S.C. § 633a(c).[27]

With respect to this second alternative, the defendant noted that, although the last allegedly discriminatory act with respect to age occurred in January 1982, Ms. McKinney did not file her formal complaint with the EEO counselor until April 30, 1982—more than 30 days later. This statement of when the last relevant discriminatory act occurred was supported by evidence in the record. Thus the defendant here alleged and supported facts that would, if no conflicting evidence was put forth, entitle the defendant to summary judgment because of Ms. McKinney's lack of timeliness.[28]

In response to this statement by the defendant, Ms. McKinney in her opposition argued that the time should be tolled because she had been unaware of the time limits and rarely visited the EEO office (where they were posted), because she had delayed contacting the EEO officer in the hope of settling the situation without legal action, and because she alleged a continuing violation of the ADEA.

■ With the opposition, however, no evidence was presented supporting the assertions of Ms. McKinney's ignorance or of facts that would be legally sufficient, if proven, to support a decision to toll the limitations period. *see, e.g., Charlier v. S.C. Johnson & Son, Inc.*, 556 F.2d 761 (5th Cir.1977) (employer's posting of ADEA information at office inadequate notice where area salesman visited office only three times in 19 and a half years). Nor

did she present any evidence tending to show that the age discrimination was of such a continuing nature as to render the January 1982 date not dispositive for timeliness purposes. For example, she did not either allege or support with evidence an allegation of a continuing policy of discrimination or of a consistent pattern of discriminatory incidents—with respect to at least one of which her application would be timely. *See Milton v. Weinberger*, 645 F.2d 1070, 1074–1077 (D.C.Cir.1981); *Shehadeh v. C & P Tel. Co.*, 595 F.2d 711, 724–725 (D.C.Cir.1978). Consequently, she in no sense carried her burden of responding to the defendant's evidence by showing that tolling was warranted with respect to her claims. *Cf. Saltz v. Lehman*, 672 F.2d 207 (D.C.Cir.1982) (*per curiam*) (Title VII case). Thus the District Court properly determined that Ms. McKinney was precluded from suing on her ADEA claim for lack of timely filing and granted summary judgment in favor of the defendant. *See* Mem.Ord. at 4–5.

### V. SEX DISCRIMINATION BY LEGAL REPRESENTATION CLAIM

Ms. McKinney's second administrative complaint alleged that she had been discriminated against on account of her sex by the government's provision of counsel for Mr. Whitfield and concomitant refusal to provide her with counsel. This allegation was reiterated in the complaint. *See* Complaint at 4–5.

■ In the Statement accompanying the defendant's motion for summary judgment the defendant asserted that the agency's action in providing counsel to Mr. Whitfield was taken in accord with agency policy to represent accused management officials but not to provide counsel to any complaining employee. This assertion was supported by adequate references to the record. *See* Statement at 3–4, ¶¶ 13–14.

---

**27.** *Compare* 42 U.S.C. § 2000e–16(c) (allowing judicial review where no action taken within 180 days of filing of complaint).

**28.** Even assuming that Ms. McKinney contacted the EEO officer on March 24, 1982, *see* note 13 *supra*, her complaint was not timely.

In her opposition to the motion for summary judgment Ms. McKinney did not attempt to refute this assertion. In fact, this claim was not mentioned in the opposition at all. Consequently, we conclude that on this issue the defendant carried its burden of showing that there was not a genuine issue of material fact: The defendant indicated evidence in the record to the effect that the action was taken in accordance with an established nondiscriminatory policy that in no way depended on sex, and Ms. McKinney did not support her burden of then demonstrating that a genuine issue of fact did indeed exist. Thus the District Court's grant of summary judgment for the defendant on this claim must be affirmed.

## VI. REPRISAL CLAIM

### A. *Background*

Ms. McKinney's final claim is that the FAA retaliated against her discrimination complaints with the EEO officer by transferring her to a temporary position where her job security, her prospects of promotion, and her ability to work competently were seriously damaged.

In response to this allegation the defendant asserted before the District Court that Ms. McKinney had, prior to the transfer, consistently requested that she be reassigned to a position in which she would not be supervised by Mr. Whitfield. The FAA also noted that Ms. McKinney, in both informal and formal grievance proceedings within the agency, had requested removal from Mr. Whitfield's supervision and that such a transfer had been recommended in the agency Grievance Examiner's findings on Ms. McKinney's formal grievance. The defendant also acknowledged that, following receipt of the Grievance Examiner's recommendation, the Deputy Administrator of the FAA assigned the plaintiff to a different office and that she had objected to this reassignment, stating in part that the position was only temporary.

But, the defendant pointed out, the Deputy Administrator had asserted to Ms. McKinney that the position was part of a program that the agency planned to continue, regardless of the fact that it was designated "temporary." And the defendant noted that Ms. McKinney's new position was at the same grade, step, and salary as her previous one and that she had admitted that she was satisfied with how she had been treated by her new supervisors.

Finally, the defendant noted that the personnel officer who had assisted the Deputy Administrator in the reassignment had stated that he did not know of Ms. McKinney's EEO complaints at the time of the reassignment. *See* Statement at 4–6; Defendant's Exhibit No. 14 (memorandum from Lionel R. Driscoll, Acting Manager, Personnel Management Operations Division, to Director of Civil Rights, dated Sept. 3, 1982).

In response to this statement the plaintiff merely asserted again that the position was temporary and without promotion potential. She also noted that the FAA, in reassigning her during the pendency of her EEO complaint, had acted in violation of its own internal regulation. *See* Order 1400.8, *supra*, ¶ 810. Finally, she asserted that the FAA's own mismanagement or incompetence in notifying the appropriate office of the pendency of the complaint did not adequately excuse the violation of the regulation.

The District Court, in reviewing these materials, noted that the transfer "came on the heels of" the Grievance Examiner's recommendation and that Ms. McKinney had herself repeatedly requested a transfer. It noted further that nothing suggested that the Deputy Administrator, who made the reassignment decision, was aware of Ms. McKinney's complaints. Finally, noting that her new position appeared in several essential respects to be comparable to her previous position, the court observed that the plaintiff had "failed to show" that her job opportunities or security had been affected by the transfer to a "temporary" position and concluded that "considerably more proof" would be required to consti-

tute a basis for a finding of retaliation. Mem.Ord. at 5–6.

## B. *Analysis*

■ Unlawful reprisal occurs when (1) an employee participates in a statutorily protected activity, (2) an adverse employment action is taken against him or her, and (3) a causal connection existed between the two. *See* 42 U.S.C. § 2000e–3(a); B. SCHLEI & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 534–535 (2d ed. 1983). Ms. McKinney's filing of a complaint with the EEO officer was clearly a protected statutory activity. *See McKenna v. Weinberger*, 729 F.2d 783, 790 n. 54 (D.C.Cir. 1984). This was not contradicted by the defendant.

■ With respect to the second question, the defendant produced evidence showing that the reassignment followed closely on the Grievance Examiner's report and that Ms. McKinney had requested reassignment on several occasions. The defendant also produced evidence indicating that a personnel officer who "assisted the Deputy Administrator" in accomplishing the reassignment was not aware of Ms. McKinney's EEO complaints.

This evidence, however, does not conclusively show that there is no genuine issue of material fact with respect to whether the action was caused by Ms. McKinney's EEO complaints. The first evidence is only of a temporal coincidence. The second is of ignorance of the protected activity by an agency official other than the one who actually made the reassignment decision. Even assuming this evidence, it is entirely possible that the Deputy Administrator knew of Ms. McKinney's protected complaints and acted in retaliation. The evidence of the previous transfer requests and the Grievance Examiner's recommendation may make the required causal connection less likely to be inferred, *see, e.g., McKenna, supra*, 729 F.2d at 791, but they do not preclude it. The permissible inference of causation in favor of Ms. McKinney, which we must allow her at the summary judg-

ment stage, indicates the presence of a genuine issue of material fact.

With respect to the third question, the question as to whether the reassignment was adverse, the defendant admitted that the position was officially classified as "temporary" but asserted that "[f]rom the agency's perspective, there [was] nothing dubious or temporary about the assignment." Defendant's Exhibit No. 13 (letter from Deputy Administrator Michael J. Fenello to Charles G. Aschmann, Jr. (counsel for Ms. McKinney), dated Aug. 27, 1982). This assertion was not supported by anything other than a letter from the Deputy Administrator to Ms. McKinney, which made this assertion without any supporting evidence. This is simply not enough. Given that the position is undisputedly officially designated "temporary," the defendant cannot sustain its burden of demonstrating that no genuine issue of material fact exists by simply introducing a letter that asserts the opposite. In sum, therefore, we find that the District Court erred in holding that no genuine issue of material fact existed with respect to Ms. McKinney's reprisal claim. Thus we vacate the grant of summary judgment for the defendant on this claim and remand for trial.

## VII. CONCLUSION

We conclude that the District Court properly granted summary judgment for the defendant on Ms. McKinney's age discrimination and sex discrimination by differential legal representation claims. We also conclude, however, that summary judgment for the defendant was improperly granted with respect to Ms. McKinney's sexual harassment/sex discrimination and reprisal claims. We therefore vacate the summary judgment for the defendant with respect to these two latter claims and remand them to the District Court for trial.

*Affirmed in part and reversed and remanded in part.*

STARR, Circuit Judge, concurring in part and dissenting in part:

I agree fully with the court's judgment and thorough opinion affirming the District

Court's dismissal of Ms. McKinney's age discrimination claim and her claim of sex discrimination in connection with the Department of Transportation's provision of legal services to supervisors and employees. As to plaintiff's allegations of sexual harassment and discrimination, I believe that, under the circumstances of this case, dismissal of the complaint with leave to amend would have been the most appropriate result. With respect, I part company entirely from the court in its treatment of Ms. McKinney's claim of reprisal.

I

The court states that the defendant presented no evidence to support its motion on the sexual harassment and discrimination claim. However, this conclusion fails, in my judgment, fairly to take into account the essence of the defendant's motion. In regard to the sex discrimination claim, the defendant was not filing a summary judgment motion at all, but a 12(b)(6) motion. Defendant's argument was that nowhere in Ms. McKinney's complaint was it alleged that Mr. Whitfield's actions were in any way sexually motivated; hence, no claim of sex discrimination would lie. *See, e.g.,* Memorandum in Support of Defendant's Motion to Dismiss at 2 ("Neither in [a previous complaint], the present complaint, nor her administrative complaint, has plaintiff ever characterized this alleged assault as sexually motivated or oriented."), 10 ("Plaintiff's Claims Of 'Sexual Harasment' [sic] Fail To State Claims Upon Which Relief Can be Granted.").

The court observes, quite rightly, that if the trial judge looks beyond the pleadings, a 12(b)(6) motion is to be treated as a motion for summary judgment. Opinion at 1134; *see* Fed.R.Civ.P. 12(b). But here the District Court did not look beyond the pleadings when it decided the sex discrimination count. The trial court stated:

> [P]laintiff has completely failed to allege facts, by affidavit or otherwise, which would create a genuine issue of discrimination based on sex. Plaintiff has nowhere suggested that the incidents complained of took place because she is a woman, or that the officials involved were motivated by improper discriminatory reasons. This aspect of the first administrative complaint fails to state a cause of action.

Mem.Op. at 4 (citation omitted). The only portion of this passage that even arguably indicates that the District Court looked outside the pleadings is the statement that the "plaintiff has completely failed to allege facts, *by affidavit or otherwise....*" Since the plaintiff did not file any affidavits, the only "otherwise" to which the court referred would seemingly have been in the complaint or other pleadings.

Furthermore, even if we were to treat the District Court's dismissal as a grant of summary judgment, I am constrained to conclude that this court's approach misses the mark. On summary judgment, the question is, of course, whether there exists any genuine issue of material fact. If, however, no facts have been alleged that would create a cause of action, then no genuine issue of material fact exists. Thus, it is sufficient for a moving party to claim that such facts have not been alleged and in support of that claim point to the alleged deficiencies in the opponent's complaint. The court holds that in order to prevail the defendant had to prove that no sexual discrimination occurred, and that the defendant failed to adduce such proof. Opinion at 1139–1140. Since, however, the defendant was claiming only that the plaintiff failed to allege facts that would state a cause of action, all the defendant needed by way of "proof" was to demonstrate in what manner the plaintiff's complaint was flawed.

Nonetheless, the court reaches the correct result in this respect because the complaint, fairly and generously viewed, should be construed as stating a cause of action for sex discrimination. In her complaint, the plaintiff averred "that she had been sexually harassed by the Defendant," and "that this conduct constituted sexual discrimination in violation of Title VII." Complaint at 3–4. Admittedly, these averments

are conclusory and vague; for whatever reason, plaintiff did not set forth the facts that she believed would, if proved, establish sexual discrimination. But, as the majority notes, in her Opposition to Motion for Summary Judgment the plaintiff more clearly set out the facts which she believed constituted sex discrimination. Opinion at 1137. Those facts, if proved, would in my view support a cause of action. Bearing in mind the admonition of Fed.R.Civ.P. 8(f) that "[a]ll pleadings shall be so construed as to do substantial justice," and that plaintiff indicated quite clearly in her opposition to the motion for summary judgment that she did indeed have in mind facts that would support a sex discrimination claim, the vague, inartfully worded complaint should nonetheless have been construed to create a cause of action, consistent with the benign and forgiving spirit of the Federal Rules. At most, the District Court should have dismissed the complaint without prejudice so that plaintiff would have been free to craft and file an amended complaint.

## II

On the reprisal claim, the court observes that for an unlawful reprisal to have occurred, a causal connection must exist between the employee's protected activity and the adverse employment action. Opinion at 1143. The court then holds that inasmuch as defendant's evidence did not foreclose the possibility that the Deputy Administrator knew of Ms. McKinney's complaint and transferred her because of that complaint, summary judgment cannot lie. *Id.* at 1142. But in doing so, the court overlooks the fact that in her opposition to defendant's motion for summary judgment, plaintiff *admitted* that the Deputy Administrator did not know of plaintiff's grievance when he effected her transfer: "[I]t is no defense that FAA's own mismanagement of its affairs prevented the appropriate office from knowing about Miss McKinney's complaint. The FAA cannot convert its own mismanagement of a case into a benefit for itself." Plaintiff's Opposition to Defendant's Motion at 6 (citation omitted). From this, it seems clear that plaintiff was arguing that the FAA's action was unlawful despite the fact that the Deputy Administrator knew nothing about plaintiff's grievance.

The court never addresses Ms. McKinney's admission, apparently on the theory that the District Court should have looked in the first instance only at the defendant's evidence; if that evidence, the theory runs, does not foreclose every material issue of fact, then the trial court would not even look at the plaintiff's response. Such an approach strikes me, with all respect, as both illogical and inconsistent with sound litigation practice. If the moving party claims that a fact exists, and the opposing party admits in response the existence of the fact, then there is obviously no genuine issue as to that fact. Indeed, in all the cases cited by the court, it appears that the party opposing summary judgment controverted the moving party's version of the facts. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). For whatever reason, that controversion simply did not occur in the case at hand.

In consequence, no genuine issue of material fact existed as to the required causal connection between plaintiff's grievance and her subsequent transfer. Once the plaintiff admitted that the Deputy Administrator was blissfully ignorant of plaintiff's grievance when he ordered her transfer, her reprisal claim came crashing down. As a result, summary judgment for the defendant on this issue was properly granted by the District Court. To that extent, I respectfully dissent from today's judgment.