**Earlene LOFTON (Burt), Plaintiff,**

v.

**Ronald W. ROSKENS, Administrator U.S. Agency for International Development, Defendant.**

Civ. A. No. 87–3032.

United States District Court, District of Columbia.

May 30, 1990.

Diane Sullivan, Asst. U.S. Atty., Washington, D.C., for defendant.

Richard Albright, Albright & Albright, Washington, D.C., for plaintiff.

## MEMORANDUM OF OPINION

REVERCOMB, District Judge.

This action is brought by Ms. Earlene Lofton (Burt), a secretary employed by the Agency for International Development ("AID" or "Agency"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff claims that during the years 1974–1978, she was discriminated against on the basis of race[1] with respect to AID's failure to provide her with on-the-job training necessary for her advancement into a Budget Analyst or career ladder position. Plaintiff also contends that the Agency reassigned her to another division within the Agency in retaliation for her "whistleblowing" activities. After consideration of all the evidence presented at trial and of the oral arguments of counsel, the Court finds that plaintiff was not the victim of discrimination or retaliation.

## I. *Findings of Fact*

The Court makes the following Findings of Fact, most of which were stipulated to by the parties:[2]

1. The plaintiff, Earlene Lofton, began her employment with the defendant Agency in 1968 as a GS-3 clerk-typist in the Financial Review Division of the Office of Financial Management. In 1969, plaintiff applied for and was promoted to a clerk-typist, GS-4. In November 1970, plaintiff applied for and was promoted to secretary (stenographer) in the Funds Control Division of the Office of Financial Management.

2. In 1972, a major reorganization occurred which changed the organizational structure of the Office of Financial Management. This reorganization changed the traditional pyramid organizational structure to a donut type organization structure. This resulted in the positions of the four major division secretary positions being downgraded from GS-7 to GS-6. During the period April 1973 to January 1975, there were personnel reductions and downgradings. There was a total freeze on hiring. During this period there was a 20% reduction in the number of employees in the Office of Financial Management. Ultimately in 1975 there was a Reduction in Force (RIF). A Civil Service Commission classification survey resulted in severe downgrading.

3. In April 1972, plaintiff applied for a GS-6 secretarial position in the Funds Control Division as secretary to Ms. Jean McColl, an alleged discriminating official. She was hired by Ms. McColl and was the only secretary in the division. The position was not a career ladder position.

4. In May 1974 plaintiff approached Jean McColl regarding a promotion to a GS-7. Ms. McColl refused and indicated that the position was only a GS-5. Ms. McColl also refused to authorize formal training in the Budget Analyst series and declined to reactivate a GS-7 Budget Analyst trainee position for plaintiff.

5. Shortly after Ms. McColl denied plaintiff's request, plaintiff went to Mr. Claude Alsop, Executive for Office of Financial Management and an alleged discriminating official, and Mr. Sidney Brown, Controller, concerning Ms. McColl's behavior. Plaintiff complained about Ms. McColl's suspected drinking problem, that Ms. McColl was communicative and easier to get along with before lunch, but seemed

---

1. Plaintiff's Amended complaint also asserts a claim for sex discrimination. The evidence, however, does not support this claim as all of the individuals whom plaintiff cites as having received on-the-job training were female. No claims of sex discrimination were asserted at any point of the trial.

2. The parties submitted Stipulated Facts, all of which have been adopted by the Court and are incorporated (usually verbatim) into Paragraphs 1–6, 10–12 and 14.

intoxicated after lunch, becoming rude and discourteous. Plaintiff made no accusations whatsoever about any discriminatory behavior. After Ms. Lofton complained to management, the conflict between plaintiff and Ms. McColl increased.

6. In January 1975, plaintiff was transferred temporarily to the position of secretary GS–6 Regional Services Division of the Office of Financial Management under the supervision of Wayne McKeel. Unfortunately, neither Ms. Lofton nor Mr. McKeel were happy with the new assignment and Ms. Lofton soon returned (at her own request) to her position in the Funds Control Division. She remained in there until 1978.

7. In April 1976, plaintiff filed a Complaint of Discrimination based on sex and race, claiming that she was discriminated against with respect to AID's failure to promote her and provide her with on-the-job training.

8. In 1978, William Maulk, a new Deputy Controller, reorganized certain functions in the Financial Management Office and rearranged the clerical staff. (Mr. Maulk was not aware of plaintiff's EEO complaint at the time). As a result, in February 1978, plaintiff was transferred to the Support Planning Division as the GS–6 Division secretary to Mr. Bourguein, Division Director. Plaintiff's position in the Funds Control Division was abolished and re-established as a GS–4 clerk-typist (part-time) position. Later, in June 1978 plaintiff became the secretary to Mr. Maulk, Deputy Controller.

9. Plaintiff contends that she was a victim of race discrimination when Ms. McColl denied her request for on-the-job Budget Analyst training in 1974 and refused to provide on-the-job training in the following years.

10. The evidence at trial demonstrated that during the 1972–1974 time period, plaintiff was a valuable employee who wanted to advance within the Agency. Her performance appraisals were routinely superior and were always approved by Ms. McColl as the reviewing official. (Ms. Dannie Baker, Deputy Director for the Division, was plaintiff's first line supervisor and was responsible for the day-to-day supervision of the plaintiff and the preparation of her performance appraisals.) Ms. McColl had approved plaintiff's earlier requests for training classes at Agency expense and on Agency time. Plaintiff earned her Associate degree in 1974 at her own expense.

11. The preponderance of evidence at trial, however, did not demonstrate that plaintiff was denied the requested training by reason of her race. There were only four Budget Analyst positions within the Funds Control Division during the 1974–1978 period. The Deputy Director of the Division was Dannie Baker (black-female), a GS–13 and the supervisory Budget Analyst. There were three other Budget Analysts in the Funds Control Division: Howard Spencer Jr. (black-male), GS–11, Senior Budget Analyst; Oscar L. Bagley (black-male), GS–9, Budget Analyst; and Shirley Carter (black-female), GS–9, Budget Analyst. Both Mr. Spencer and Ms. Carter were promoted to their Budget Analyst positions while Ms. McColl was the Director of the Funds Control Division. Ms. Baker was promoted twice while under Ms. McColl's supervision and became the Deputy Director of the Funds Control Division under Ms. McColl after the departure of Trudy Downer (white-female).

12. Prior to 1974, there were two other GS–11 Budget Analyst positions in the Funds Control Division. One was occupied by Ms. Evelyn Manuel (hispanic-female) and the other by Mr. Clinton Luckett (black-male). These positions were never filled—by either Jean McColl or her successor, Dannie Baker—after they were vacated·by the incumbents.

13. Both parties agree that Ms. McColl's treatment of the people in her unit was erratic and, at times, quite harsh. Many of the employees believed that she was an alcoholic and testified that Ms. McColl would return from lunch intoxicated. There was testimony that Ms. McColl had referred to blacks while reminiscing about her "plantation days" and that Ms. McColl told Ms. Baker that she could "pass" for an Indian or some other non-

black ethnicity. Ms. Baker also testified that Ms. McColl treated her former Deputy, Trudy Downer, quite severely, denying Ms. Downer vacation and sick leave when she was ill with cancer.

14. Plaintiff also points to the advancement of three other secretaries in Regional Service Division as evidence of race discrimination. These three white females, Diannah Vann, Sophia Atsalinos (Rielh) and Joan Henry, received on-the-job training and were allowed to assume non-secretarial duties by their supervisors. As a result, Ms. Vann and Atsalinos were promoted. (Ms. Henry left the Agency). Ms. Diannah Vann was selected for a career ladder GS–7/9 Budget Analyst trainee position. However, the position was cancelled and she was never promoted to a GS–7 budget analyst position while at AID. She subsequently left the Agency. Ms. Sophia Atsalinos (now Rielh) moved into the administrative field and, more recently, the personnel field. She is now a GS–12 personnel specialist.

15. The Regional Services Division had very different personnel needs than the Funds Control Division. Regional Services Unit more than forty employees and numerous secretarial positions. The Funds Control Division was a much smaller division and had only one secretarial spot. There were no GS–7 secretarial positions in the Funds Control Division during the relevant time.

16. Finally, plaintiff's friend and immediate supervisor, Ms. Baker, who is black, testified that she would have willingly trained plaintiff had plaintiff so requested. Plaintiff, however, never made such a request.

## II. *Conclusions of Law*

### A. Plaintiff's Failure to Receive On–The–Job Training

■ Plaintiff claims that she has been unable to advance into a career ladder position, specifically the position of Budget Analyst, because of her lack of on-the-job training. Plaintiff contends that this training was denied by reason of supervisor McColl's discriminatory animus.[3]

Plaintiff has established a prima facie case of race discrimination. Plaintiff belongs to a protected group and she apparently was qualified to receive Budget Analyst training. The parties dispute whether plaintiff actually was denied on-the-job training as plaintiff's immediate supervisor testified that she would have *informally* trained plaintiff had plaintiff made such a request. However, the record is clear that Ms. McColl denied plaintiff's request for *formal* on-the-job training.

There is also a question as to whether persons "similarly situated" to plaintiff were given on-the-job training. Plaintiff points to Ms. Vann, Henry and Atsalinos (Rielh), three whites who received on-the-job training and subsequent promotions to Budget Analyst positions. Although these women were in a different unit with different labor needs, given the fact that there were no other "similarly situated" people in plaintiff's small unit, the other division is useful at least for purposes of establishing a prima facie case. In view of all of the circumstances—plaintiff's superior ratings, her sincere willingness to work towards advancement, and the utterly inappropriate comments made by Ms. McColl—there is an inference of unlawful discrimination while plaintiff was in the Funds Control Division. See *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). (There is no evidence whatsoever suggesting that plaintiff was a victim of race discrimination while in the Regional Services Unit. She only worked there a few months before requesting a transfer to her old unit.)

■ The burden then shifts to defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected for a legitimate nondiscriminatory reason. *Texas Dept. of Community Affairs, supra,* 450 U.S. at 254, 101

---

**3.** While plaintiff admits that the Agency generally does not have an obligation to provide its employees training necessary for advancement, she contends that if such training is provided to some employees, it can not be denied to others for discriminatory reasons.

S.Ct. at 1094; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Defendant AID explains that plaintiff's training request was rejected because there were no Budget Analyst positions available in the Funds Control Division, nor would there be in the near future. The Agency was obviously in a state of reorganization and flux. There was a major reorganization in 1972; from 1973 to 1975, there were significant personnel reductions and downgradings; there was a total freeze in the number of employees in the Office of Financial Management; and, ultimately in 1975, there was a Reduction in Force. Having produced evidence from which this Court could rationally conclude that the employment decision had not been motivated by discriminatory animus, defendant has rebutted plaintiff's presumption. See *Texas Dept. of Community Affairs, supra*, 450 U.S. at 257, 101 S.Ct. at 1095–96.

■ The burden now returns to plaintiff to prove by a preponderance of the evidence that the presumptively legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *McDonnell Douglas Corp., supra*, 411 U.S. at 804, 93 S.Ct. at 1825. Plaintiff points to Ms. McColl's comments, the on-the-job training of Vann, Rielh and Henry and the promotion of Vann and Rielh. Certainly, the McColl statements weigh in favor of plaintiff's claim of pretext. However, the Court can not ignore the fact that all of the Budget Analysts under Ms. McColl were black and, that prior to 1974, the two other Budget Analysts were black and hispanic. Most of these individuals were promoted while under McColl's supervision. Given the testimony about Ms. McColl's insensitivities to the other employees in her unit and the overwhelming evidence of the personnel cutbacks within the Agency, this Court can not conclude that McColl's denial of plaintiff's request for training was motivated by race.

Nor does the training and promotion of three secretaries in Regional Services Division demonstrate defendant's animus. The two divisions had significantly different personnel needs. The Funds Control Division had only one secretary, whereas Regional Services had several and more than 40 people in the entire unit. Even so, plaintiff has not demonstrated that the training given to the three other secretaries differed in any way from the training available to her. Plaintiff's immediate supervisor testified that she would have gladly trained plaintiff informally had she so requested. Ms. Rielh testified that her training was *informal.* Presumably, Ms. Vann's training was also informal as she simply moved her desk to a different area. In light of all of the evidence presented and given the uncontroverted evidence of the Agency's significant personnel cutbacks during the relevant time period, this Court can only conclude that it is more likely than not that race played no part in any personnel action affecting Ms. Lofton.

**B. Plaintiff's Claim of Retaliation**

■ Plaintiff also claims that her reassignment in 1975 was in retaliation for her complaints about Ms. McColl. Plaintiff's claim must fail. There was no evidence at trial suggesting that the reassignment was "adverse" to plaintiff's career. Given the fact that plaintiff was transferred away from a supervisor with whom she had a conflict, it is more likely than not that the transfer would have enhanced her chances of advancement. Nevertheless, plaintiff requested a return to the Funds Control Division. Furthermore, there is no indication that the transfer was somehow connected to a retaliatory motive as opposed to management's attempt to diffuse a personality conflict. Under the circumstances, plaintiff has failed to establish a prima facie case of reprisal. See *McKinney v. Dole*, 765 F.2d 1129, 1143 (D.C.Cir.1985).

**III. *Conclusion***

While the Court commends plaintiff for her desire to improve herself and is sympathetic to her frustration in failing to receive additional training, the record simply does not demonstrate that plaintiff was the victim of race discrimination or reprisal.

## JUDGMENT ORDER

In accordance with this Court's Memorandum of Opinion and Order of May 30, 1990, IT IS ORDERED that judgment be entered in favor of the defendant Ronald W. Roskens, Administrator U.S. Agency for International Development and against plaintiff Earlene Lofton (Burt).