Robert S. TURNER, Plaintiff,

v.

William P. BARR, Defendant.

Civ. A. No. 91–3101 (CRR).

United States District Court,
District of Columbia.

Jan. 13, 1993.

Alan G. Warner, Washington, DC, and Jeanne Sandy, Gaithersburg, MD, for plaintiff.

Jay B. Stephens, U.S. Atty. for the District of Columbia, Asst. U.S. Attys. (John

D. Bates and Charles F. Flynn, Janice M. Rodgers, Associate Legal Counsel, U.S. Marshals Service, of counsel), for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

This is a disparate treatment case against the U.S. Marshal's Service in which the plaintiff, a 47 year old white male of the Jewish faith, claims that his employer violated his rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–16(a), in that the terms and conditions of his employment as a Deputy U.S. Marshal at the D.C. Superior Court violated his rights to a work environment free from religious, ethnic, or racial discrimination.

Trial was held in this case on November 23 and 24, 1992. The Court, after careful consideration of all the evidence and the underlying law, concluded that the Plaintiff was subjected to a hostile work environment in violation of Title VII, and that a disciplinary action taken against him was the product of that hostile working environment. Consequently, the Court entered judgment on the Complaint for the Plaintiff on November 25, 1992. The Defendant has filed a Motion to Alter and Amend Judgment, asking this Court to vacate its Order of November 25, 1992, on the ground that the Order and accompanying Memorandum Opinion are based upon an incorrect application of the facts to the law in this case. After carefully considering the submissions of the parties, the applicable law, and the entire record herein, the Court must deny the Defendant's Motion.

### DISCUSSION

I. THE DEFENDANT AGREES THAT HOSTILE WORK ENVIRONMENT CLAIMS ARE COGNIZABLE UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, AS DISCRIMINATION ON THE BASIS OF RACE AND RELIGION.

The Defendant, as well as the Plaintiff, recognizes that hostile work environment claims are cognizable under Title VII of the Civil Rights Act of 1964, as amended. *See Defendant's Memorandum of Points and Authorities in Support of Motion to Alter and Amend Judgment,* at 1; *Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Alter and Amend Judgment,* at 2. Indeed, the Defendant does not disagree with the legal principles set forth in this Court's Memorandum Opinion of November 25, 1992, but rather with their application to the facts as the Court found them in this case. *See Defendant's Motion to Alter and Amend Judgment,* at 1. Consequently, the Court relies on the thorough statement of the applicable legal principles as set forth in its Memorandum Opinion of November 25, 1992, as well as the parties' memoranda addressing the instant motion, and need only set forth here a summary of the relevant law.

 Title VII prohibits employers from creating or condoning a hostile work environment based upon incidents of harassment or unequal treatment. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). A single incident, without more, does not give rise to a cause of action; a Plaintiff must show "a pattern or practice of harassment" in order to fall under the protection of Title VII. *Bundy v. Jackson,* 641 F.2d 934, 943 n. 9 (D.C.Cir.1981). However, the harassment need not take the form of incidents with clearly racial or religious overtones; "any harassment or other unequal treatment of an employee" caused by the race or religion of the employee may create a violation of Title VII. *See McKinney v. Dole,* 765 F.2d 1129, 1138 (D.C.Cir.1985). An employer will be liable for discriminatory conditions under two circumstances: (1) if the harasser is the employer or one of its agents, or supervisory personnel, *Bundy,* 641 F.2d at 943; *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554 (11th Cir. 1987), or (2) the employer knew or should have known of harassment caused by co-workers, but failed to take corrective ac-

tion. *See Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317 (7th Cir.1992).

Neither of the parties disagrees with these principles of law. Rather, the Defendant claims that the facts found by this Court in its November 25, 1992, Opinion, do not satisfy these legal standards. Upon review, however, the Court must conclude that the factual findings clearly indicate that the Defendant knew or should have known, both directly and indirectly, about the harassment to which the Plaintiff was subjected. Consequently, the Defendant is liable for the hostile work environment which it created and condoned.

## II. THE FACTS CLEARLY INDICATE THAT THE PLAINTIFF WAS SINGLED OUT BECAUSE OF HIS RACE AND RELIGION AND SUBJECTED TO HARASSMENT, AND THAT THIS HARASSMENT MAY BE ATTRIBUTED, BOTH DIRECTLY AND INDIRECTLY, TO HIS SUPERVISORS AND THE DEFENDANT AS HIS EMPLOYER.

■ This Court's Memorandum Opinion of November 25, 1992, set forth the Court's findings of fact in this case. The Court found a number of incidents had occurred which indicated that the Plaintiff was subjected to a hostile work environment. The Defendant's current motion claims that these incidents cannot be attributed to the Defendant as employer because the Defendant and its supervisors were unaware of the incidents. However, the evidence indicates that the Plaintiff's supervisors were aware of most of the incidents and participated in at least one of the incidents. Although the incidents are set out in full in the November 25, 1992, Opinion, the Court will briefly restate them here to show how they indicate the existence of a hostile work environment. The Court notes, as it did in its November 25, 1992, Opinion, that it found the Plaintiff to be a very credible witness whose memory and demeanor impressed the Court as being complete and sincere and who presented more than a preponderance of the evidence to sustain his burden of proof as to each of the elements of his claim.

(1) The Plaintiff was required to suffer reference to the Holocaust by one of the supervisory Deputies. The Deputy related a joke about the Holocaust. The Deputy stated that the cost of Germany's reconstruction after World War II was high because of its high gas bill during the War. The Defendant concedes that this joke may be taken by the Court as an indication that the Plaintiff suffered discrimination on account of his religion. Further, because the joke was made by a supervisor, the Defendant can be held responsible.

The Defendant claims, however, that from this single incident, no inference may be drawn of a hostile work environment. If this incident were isolated, the Defendant would be correct. However, the Court may take this incident, along with the others attributable to the Defendant, as evidence of a hostile work environment because it was not a single, isolated event. *See Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1236 (D.C.Cir.1984) (deciding how much weight to give a particular incident is a question for the fact-finder).

(2) The Plaintiff was denied the opportunity to work overtime in an amount comparable to many of the Deputies in his office who were not white or Jewish. The assignment of overtime is a supervisory function, and the Defendant does not dispute that knowledge of disparities in overtime hours can be attributed to supervisory personnel in this case.

(3) In the original squad room, the white Deputies had desks at the back of the office, and the African–American Deputies referred to the section as Georgetown. When the Plaintiff was sitting at another desk, he was instructed by one of the African–American Deputies to "get back to Georgetown." The Defendant concedes that it is likely that "supervisory personnel were aware that the white Deputies sat together." *Defendant's Memorandum of Points and Authorities in Support of Motion to Alter and Amend Judgment*, at 6 n. 2.

■ The Defendant claims that it is not responsible for the segregation because the Plaintiff did not inform his supervisors about the problem. However, the Plaintiff need not inform his supervisors of situations which they "knew or should have known." It is true that employers may not be held responsible when they "could not have known of the possible problem." *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 350 (8th Cir.1988), *cert. denied*, 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989). However, an employer may not blindly ignore situations for which it can be "charged with actual or constructive knowledge." *Id.* In this case, the fact that the white Deputies were huddled together at the back of the room could not escape the notice of a reasonably vigilant employer.

(4) The Plaintiff was also subject to personal abuse in the office. A poster was put up anonymously with the Plaintiff's photograph superimposed next to a set of keys and the word "Turnkey." The nickname caught on and the Plaintiff was constantly referred to by that name. He even received memos addressed in handwriting by this name. The Defendant concedes that members of the management staff were aware of the posting of the nickname.

■ The Defendant claims that, because the nickname does not explicitly refer to the Plaintiff's religion or race, it cannot serve as evidence of a hostile work environment. Nevertheless, the poster clearly indicates the abuse to which the Plaintiff was subject. Moreover, evidence of harassment need not have explicitly racial or religious overtones. The Plaintiff need only show that the harassment would not have occurred but for the Plaintiff's race or religion. *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C.Cir.1985). In this case, the Plaintiff has carried his burden and has shown that the supervisory staff was aware that this harassment was occurring.

(5) The Plaintiff came forward with other evidence that he was subjected to harassment because of his religion and race. When the Plaintiff was assigned to collect for a charity drive, he was subjected to comments about the appropriate nature of the assignment, because Jews were supposedly skilled in dealing with money. On another occasion, when the Plaintiff was assisting in the execution of a writ at a jeweler's store, the Plaintiff was told that he should have been running the store. The clear and indisputable thrust of the comment was that being a jeweler was something for Jews. Furthermore, in the course of conversations, white Deputies were referred to as "white asses," and "white boys." Also, the Plaintiff was told by an African–American Deputy that the Plaintiff should get his "white ass out of the office" because "this is a black office, for blacks, supervised by blacks."

As the Defendant has pointed out, these incidents have not been linked to particular supervisory personnel. However, the Court is free, as the finder of fact, to make the reasonable inference that the number and severity of these events is such as to bolster the Court's conclusion that a hostile work environment did exist and it is more probable than not that the supervisory staff was aware that the Plaintiff was a victim of harassment and abuse.

(6) The ultimate incident giving rise to this action was the discipline or seven day suspension of the Plaintiff for the escape of a now-deceased prisoner, Kenneth Ashby, on January 16, 1990. As indicated, an investigation conducted some eight months later and after the prisoner had died was the alleged basis for which the Plaintiff was suspended from duty for seven days. While the Court does not rule on the accuracy of the finding that the Plaintiff was responsible for the prisoner's escape, the Court does find that the procedure for the investigation was deficient in many regards. First, in spite of the serious nature of the incident, the Plaintiff was not interviewed until about ten months after the incident. Furthermore, he was given no opportunity to review what had happened before being interviewed. Also, the final report was full of typographical errors and demonstrates a lack of regard for detail and precision. The Investigator testified that he did not view the courtroom from

which the prisoner was said to have made his escape. He also stated that he did not investigate a number of other relevant matters as well. The Defendant does not dispute that the decision to discipline the Plaintiff was based solely on this report.

Another individual (an African American) received a "letter of instruction" after the investigation. The letter is not a disciplinary action and nothing appears in this individual's record. The Defendant explanation as to why this individual was only "cautioned" about his alleged role in the escape of Kenneth Ashby was unconvincing, in light of the other incidents of harassment to which the Plaintiff was subjected. Thus, the Court reasonably concluded that the Plaintiff was "singled out" for discipline, at least implicitly, as a result of the repressive working atmosphere, based on his race and religion. The Plaintiff has shown, based upon the previous episodes of harassment, that a hostile work environment caused the investigation and subsequent punishment to be handled differently than they would have been, if the person under investigation had not been the Plaintiff.

The incidents listed above clearly demonstrate that the conduct of the Plaintiff's supervisors and fellow employees was "sufficiently pervasive to amount to harassment and create[d] a hostile or offensive work environment...." *Broderick v. Ruder*, 685 F.Supp. 1269, 1277 (D.D.C. 1988). The "totality of the circumstances" indicates that the Plaintiff was subject to harassment on the basis of his race and religion and that the harassment occurred with the knowledge of the Defendant and the supervisory staff. Both the frequency of the events and their severity justify a finding of a hostile work environment. *Vance v. Southern Bell Tel. and Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir.1989).

## CONCLUSION

For the reasons expressed herein, the Court finds that its Memorandum Opinion and Order of November 25, 1992, properly applied the law to the facts of this case. Plaintiff demonstrated that he was subject to harassment based on his race and religion. Further, he showed that this harassment was of a continuous nature, ignored by management personnel, and severe enough as to constitute a hostile work environment. This harassment constitutes disparate treatment and is in violation of Title VII. Accordingly, the Defendant's Motion to Alter and Amend this Court's Order of November 25, 1992, must be denied. The Court shall enter an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## ORDER

Upon consideration of the Defendant's Motion to Alter and Amend the Judgment of November 25, 1992, in the above-captioned case, the record herein, and the applicable law, and for the reasons expressed in this Court's Memorandum Opinion of even date herewith, it is, by this Court, this 13th day of January, 1993,

ORDERED that the Defendant's Motion to Alter and Amend Judgment shall be, and hereby is, DENIED.