Sullivan
No. 92-685

CLAIRE MURRAY, INC.

v.

LARRY E. REED

March 23, 1995

438

*William F. Swiggart,* of Cambridge, Massachusetts, by brief for the plaintiff.

*Clauson & Smith,* of Hanover, for the defendant, filed no brief.

HORTON, J. The plaintiff, Claire Murray, Inc., petitioned for an accounting from the defendant, Larry E. Reed. The Superior Court (*Morrill,* J.) dismissed the petition for failure to state a claim upon which relief may be granted. On appeal, the plaintiff argues the petition was a means to discover whether facts sufficient to support a tort action exist, and that a security agreement it entered into did not transfer any tort action that it may have against the defendant. We reverse and remand.

"The standard of review in considering a motion to dismiss is whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." *Thompson v. Forest,* 136 N.H. 215, 216, 614 A.2d 1064, 1065 (1992) (quotation omitted). The facts alleged in the plaintiff's pleadings are assumed to be true, and all reasonable inferences are construed in the light most favorable to the plaintiff. *Id.*

Robert Sarvis and his wife, Claire Murray Sarvis, were co-owners of Claire Murray, Inc. (CMI), a corporation duly formed under Massachusetts law. On March 20, 1990, CMI entered into a security agreement with Falmouth National Bank (bank). The collateral advanced by CMI to secure the loan was extensive, including all present and after-acquired general intangibles.

Claire Murray Sarvis gained control of CMI when the couple separated in June 1991 and was later elected its president. Robert Sarvis was enjoined from interfering with CMI's business operations. While in control of CMI's management operations Claire Murray Sarvis hired the defendant to perform accounting services for CMI. In June and July 1991, CMI failed to make timely interest payments on its loan even though it had sufficient revenue to cover the payments. In

September 1991, the bank became a creditor in possession of all of CMI's assets contained in the security agreement and later conducted a secured party private sale of the security interests. Just prior to the takeover by the bank, CMI issued a series of checks to the defendant totaling $11,100. Claire Murray Sarvis thereafter resigned from CMI. Robert Sarvis regained control, assuming the roles of president, secretary, treasurer, and sole director, and asked the defendant to turn over any reports or work product he prepared for CMI. The defendant refused, claiming a conflict of interest due to his employment with ANB, a corporation created by Claire Murray Sarvis upon her resignation from CMI, which was engaged in activities similar to those of CMI. ANB had purchased all of CMI's collateral held by the bank as a secured creditor.

A petition for accounting involves two stages: (1) a demand for information in the nature of a discovery request; and (2) a demand for relief appropriate to the information developed, if any. *See* 1 AM. JUR. 2d Accounts and Accounting § 58, at 617, § 59, at 618 (1994); *see also Brooks v. Goodwin,* 70 N.H. 281, 281, 47 A. 255, 256 (1900). The standard for a motion to dismiss at the discovery stage is whether the plaintiff is entitled to the information he seeks. In the case at bar, the trial court should not have granted the motion unless the plaintiff was not entitled to learn from the defendant the facts underlying the money transfers. If the plaintiff was entitled to discover the facts underlying the transaction, the court should have ordered the defendant to disclose the requested information. Once the information is disclosed, the petition for accounting proceeds to the relief stage, where the court may grant a motion to dismiss if the facts discerned from the discovery stage do not support a cause of action.

██ ██ The plaintiff may use the petition for accounting as a discovery device. "[T]he purpose of an account is to determine with what the accountant should be charged." *Duncan v. Dow,* 95 N.H. 5, 6, 57 A.2d 417, 418 (1948). As CMI's accountant, the defendant has a duty to account for the disbursements so that the corporation can ascertain whether any claim against him exists and the status of that claim. 1 AM. JUR. 2d *Accountants* § 23, at 546–47 (1994). Equity will take jurisdiction of an action for accounting where discovery is needed and a confidential or fiduciary relationship exists between the parties. 1 AM. JUR. 2d *Accounts and Accounting* § 58, at 617. The nature of the defendant's accounting work for CMI made him a fiduciary. *See Brown v. KPMG Peat Marwick,* 856 S.W.2d 742, 747 (Tex. Ct. App. 1993). Therefore, the defendant must account for the disbursements by supplying CMI with the facts surrounding the five payments CMI made to him in September 1991.

■ The characterization of the action upon discovery of information concerning the transfers determines whether the plaintiff may pursue relief against the defendant. The plaintiff argues that the petition for accounting would support various tort claims such as fraud, breach of fiduciary duty, and conversion. If the facts reveal a claim sounding in contract, CMI has no right to pursue relief against the defendant because all contract claims have been transferred from CMI to the bank pursuant to security agreement and sold by the bank to ANB. If the facts reveal a cause of action sounding in tort, such as fraud, breach of fiduciary duty, or conversion, CMI retains the right to pursue relief because no tort causes of action were transferred under the security agreement.

The only language in the security agreement that could possibly permit a transfer of a tort cause of action is the section regarding general intangibles. The section purports to grant a security interest in general intangibles as defined in the Uniform Commercial Code as well as in other general intangibles, including causes of action. By agreement of the parties, the security agreement is interpreted under Massachusetts law. Therefore, we examine Massachusetts law to determine whether it permits transfer of a tort claim.

■ Under the Uniform Commercial Code general intangibles include "any personal property, including things in action, other than goods, accounts, chattel paper, documents, instruments, and money." *MASS. GEN. LAWS ANN. ch. 106 § 9-106 (West 1990)*. The definition of general intangibles, however, does not include intangibles specifically excluded from article 9. *MASS. GEN. LAWS ANN. ch. 106 § 9-106,* Uniform Commercial Code Comment. Tort claims are not transferable under article 9 of the Uniform Commercial Code. Section 9-104(k) states that article 9 does not apply to a transfer of any claim arising out of tort. *MASS. GEN. LAWS ANN. ch. 106 § 9-104(k) (West 1990)*. Therefore, Massachusetts law does not permit transfer of a tort claim pursuant to article 9 of the Uniform Commercial Code.

We also conclude that tort claims of the sort that the plaintiff expects to find are not assignable under Massachusetts law and, therefore, are not transferable pursuant to a security agreement. *See Piper v. Childs,* 195 N.E. 763, 766 (Mass. 1935) (if corporation has no power to assign claim by express agreement, it cannot do so by implication of law). Tort claims for fraud and breach of fiduciary duty do not constitute "damage to specific property" and, therefore, are not assignable. *Baker v. Allen,* 197 N.E. 521, 524 (Mass. 1935). A cause of action in tort for personal injuries is not assignable where the claim includes damages to specific property and non-assignable claims. *See Bethlehem Fabricators v. H.D. Watts Co.,* 190 N.E. 828, 833 (Mass. 1934) (tort claim for damage to property plus injury to business credit,

financial standing, reputation, and feelings of the injured person was not divisible and, therefore, not assignable). The "right to litigate a fraud perpetrated upon a person is not assignable at law or in equity . . . ." *National Shawmut Bank of Boston v. Johnson,* 58 N.E.2d 849, 859 (Mass. 1945).

At first glance it may appear that the Massachusetts Supreme Judicial Court reconsidered its position regarding the assignability of claims of fraud and breach of fiduciary duty in *Larabee v. Potvin Lumber Company, Inc.,* 459 N.E.2d 93 (Mass. 1983). The court stated that "[t]here is no general obstacle in principle to the assignment of a cause of action for tort. Claims for injury to property interests are clearly assignable." *Id.* at 96. *Larabee,* however, neither addressed the assignability of tort claims of fraud and breach of fiduciary duty nor cited any of the cases discussed above restricting the assignability of such claims. Therefore, we construe *Larabee* as merely reaffirming the law permitting assignment of claims for property damage.

If the information developed in the accounting discloses claims sounding in contract rather than in tort, the plaintiff has no right to pursue relief under this petition because all contract claims have been transferred by the bank pursuant to the security agreement; if the facts disclose a claim sounding in tort, such as fraud or breach of fiduciary duty, the plaintiff may pursue relief against the defendant. We reverse the trial court order holding that all potential causes of action were transferred pursuant to the security agreement; we hold that CMI retains the right to maintain the petition against the defendant through the information stage; and we remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

JOHNSON, J., did not participate; the others concurred.