**JANUS PETROLEUM COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 94 CV 0624.

United States District Court, E.D. New York.

Feb. 20, 1996.

Uncyk, Borenkind & Nadler (Eli Uncyk, of counsel), New York City, for plaintiff.

Zachary W. Carter, U.S. Attorney (Thomas A. McFarland, of counsel), Brooklyn, NY, U.S. Dept of Justice, Tax Div. (Peter Sklarew, of counsel), Washington, DC, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Janus Petroleum Company, Inc. ("Janus"), a wholesale distributor of gasoline, brought this action against the United States under section 7422 of the Internal Revenue Code (the "Code"), 26 U.S.C. § 7422, seeking a credit or refund of alleged overpayments of federal gasoline excise taxes for the quarters ending March 31, June 30, and September 30 of 1989.

Janus claims jurisdiction pursuant to 28 U.S.C. § 1346(a)(1), giving the court jurisdiction in an action against the United States for "recovery" of any tax alleged to have been erroneously or illegally assessed or "collected." Plaintiff moves for summary judgment, and defendant cross-moves for partial summary judgment. The case raises an issue the government says is of first impression.

### I

The following facts are undisputed. In the first three quarters of 1989 Janus bought gasoline from various suppliers. Janus says the amount of the federal excise sales tax on gasoline was included in the price it paid these suppliers. Janus later sold some of the gasoline to the City of New York (the "City"), which is exempt from the tax.

On October 19, 1989, Janus filed with the Internal Revenue Service (the "Service") three claims for refund of alleged overpayments in 1989, $125,080.98 in the first quarter, $279,603.87 in the second, and $9,512.37 in the third, attributable to tax exempt sales to the City. The Service denied the claims because Janus had not shown that the upstream suppliers liable for the tax had paid the Service. Janus then claimed the same alleged overpayments as tax credits against federal gasoline excise taxes it incurred in 1990 and 1991. The Service disallowed these credits and assessed a deficiency.

### II

To put the case in context requires a brief review of the recent history of the federal gasoline excise tax. Before 1988, the Code imposed the tax on the sale of gasoline by an importer or "producer," *see* § 4081, but exempted a sale by one "producer" to another provided that other producer registered with the Service under § 4101. "[P]roducer" was defined in § 4082 to include "wholesale distributors."

Because wholesale distributors generally did register as producers, the tax was typically deferred until they sold gasoline to a retail gas station. A registered wholesale distributor could sell tax-free to state and local governments but had to pay the tax on sales to commercial customers. *See* § 4221(a).

These earlier provisions led to the evasion of huge amounts of tax revenues. Because the Service had a hard time tracking gasoline after its removal from terminals, dishonest wholesale distributors would tell their customers they were registered for tax-free purchases, invoice those customers for the amount of tax allegedly payable to the Service by the wholesale distributor, and then dissolve or disappear before the Service could catch up with them. *See United States v. Musacchia*, 900 F.2d 493, 495–96 (2d Cir. 1990), *cert. denied*, 501 U.S. 1250, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991) (describing a typical "daisy chain" scheme for evading the tax). The United States was robbed of literally multimillions of dollars. *See* H.R.Rep. No. 127, 103d Cong., 1st Sess. (1993), 1993 WL 209639, at 73 (citing estimates that gasoline excise tax evasion has resulted in losses of between $250 million and more than $1 billion since 1986).

To minimize such unscrupulous schemes, the Tax Reform Act of 1986 (the "1986 Act") amended the Code to move the point of taxation upstream as of 1988. *See* H.R.Rep. No. 391 (II), 100th Cong., 1st Sess. (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–378, 2313–1177. Beginning in that year, § 4081(a)(1) imposed a single tax on the earlier of the removal of gasoline from a terminal or its sale by a refiner, importer, or terminal operator.

Further legislation was passed in 1990 in order to try to prevent continued evasion. *See* H.R.Rep. No. 247, 101st Cong., 1st Sess. (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906,

2794. But that legislation is not applicable here.

## III

The 1986 legislation, effective in 1988, did not change various other provisions in the Code. Even before 1988, § 6416 had allowed, and it still allowed, taxpayers, on certain conditions, to recover overpayments of taxes. For example, under § 6416(b)(2)(C), "[t]he tax paid" on the sale of gasoline "shall be deemed to be an overpayment" if the gasoline has been sold to a state or local government for its exclusive use.

This case concerns a subsection added by the 1986 legislation to § 6416. That subsection provides that a "wholesale distributor who purchases any gasoline on which tax imposed by section 4081 has been paid and who sells the product to its ultimate purchaser shall be treated as the person (and the only person) who paid the tax." § 6416(a)(4)(A).

Janus says that because it made a payment to a supplier that purported to include the tax in its invoice Janus thereby "paid" the tax.

That argument strikes the court as meritless, indeed fatuous. Manifestly, someone has to have "paid" the tax not to a private party but to the Service before a "refund" is justified. Janus may "be treated" as the payor only if the tax "has been paid" to the Service. Given the history of evasion of the gasoline excise tax, Congress could hardly have been so naive as to make payments to suppliers the equivalent of payments to the Service.

There is also not the slightest warrant for Janus' contention that the tax is imposed on and paid by the purchaser and merely collected by the seller. Section 4081(a)(1), referred to above, imposes a single tax and imposes it solely on the refiner, importer, or terminal operator, not on the buyer. Cf. United States v. Victoria–21, 3 F.3d 571, 573 n. 4 (2d Cir.1993) ("Federal excise tax law requires a *one-time payment* of $.141 per gallon on all gasoline sold. 26 U.S.C. § 4081.") (emphasis added). When Congress has sought to impose collected excise taxes it has used appropriate language to do so. See, e.g., 26 U.S.C. § 4251(a) (tax on amounts paid for telecommunications "shall be paid by the person paying for such services").

## IV

The issue remains as to whether the burden is on Janus to show that the Service has actually received payment of the tax. The Service says that this court has no jurisdiction unless Janus makes that showing.

Under 28 U.S.C. § 1346(a)(1), the court has jurisdiction over actions against the United States for the "recovery" of any "tax alleged to have been erroneously or illegally assessed or collected." The Supreme Court has held that under this section a condition precedent to the right to sue to "recover" a tax is full payment to and collection by the United States of the tax due. See Flora v. United States, 357 U.S. 63, 74, 78 S.Ct. 1079, 1086, 2 L.Ed.2d 1165 (1958). See also Magnone v. United States, 902 F.2d 192, 193 (2d Cir.), cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

Ordinarily only a party legally liable for a tax may bring suit for a refund under 28 U.S.C. § 1346(a)(1). See Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States Internal Revenue Serv., 845 F.2d 139, 142 (7th Cir.1988). Section 6416(a)(4)(A) creates an exception to that rule. It permits a person who buys gasoline on which a tax "has been paid," that is, a tax the Service has "collected," to "be treated" as the payor for purposes of a claim for a refund.

Janus argues that the Service presumably knows whether or not it "has been paid" the tax and that the Service may not defeat the refund claim unless it shows the tax has not been paid. This is quite contrary to the judicial decisions cited above requiring the person suing for a refund to establish that the tax has been paid in full to the United States.

Moreover, the argument makes no sense. To allow wholesale distributors such as Janus to obtain a refund merely by stating that

they paid a price that included the cost of the tax would invite further hemorrhaging of gasoline tax revenues. Gasoline purchasers would have little incentive to ensure that the taxes had been paid by an upstream supplier. To require those purchasers to provide proof that the tax "has been paid" makes it less likely they will participate in schemes of evasion.

Janus is also in a better position than the Service to obtain documentation of payment of the tax. A buyer of gasoline may readily demand as a condition of purchase that its seller provide that proof. Because payments to the Service are often made not by the direct supplier of the party seeking the refund, but by upstream suppliers, the Service may have difficulty identifying the payor of the tax.

In addition, even if the Service can verify that a particular supplier has paid the tax in a particular quarter, it may not be able to determine whether those payments were attributable to the gasoline for which the refund is sought. Indeed, the Code's confidentiality provisions may prevent the Service from disclosing any information it does obtain. *See* § 6103.

Janus' claim will be dismissed for lack of jurisdiction to the extent that it seeks refunds of taxes whose payment it has not established.

## V

The Service says it will allow refunds to the extent it has received payments of tax for gasoline sold by Janus to the City. But the Service says that some of the refunds it granted in the first two quarters of 1989 were erroneous because there is no proof that taxes were paid on the sales of all the gasoline on which those refunds were based. The Service wishes to reduce the refund payments due in this action by the amount that its previous refunds were excessive. If sums already refunded remain after this reduction, the Service seeks to offset them against the deficiencies assessed when the Service disallowed the credits by Janus in subsequent quarters.

The Service is authorized, within the applicable limitations period, to credit the amount of any overpayment against "any liability" for federal taxes of the person who made the overpayment. *See* § 6402(a). After offsetting the overpayment against any outstanding tax liability, the Service "shall" refund any remaining balance to that person. *See id.*

Any refunds to Janus for sales of gasoline on which the excise taxes had not been paid were erroneous. Janus is liable for the amount of these refunds as well as for the deficiency that resulted when the Service disallowed the credits that it had claimed in 1990 and 1991. But there is a question whether the applicable period of limitations has expired.

Section 6532(b) provides that a suit under § 7405 for recovery of an erroneous refund must be brought within two years after the making of the refund, or five years if any part of the refund was induced by fraud or misrepresentation. The erroneous refunds were issued in 1989. The Service has not yet brought suit. Even if the refund had been induced by fraud or misrepresentation— which the government has not alleged—the limitations period has expired.

But suit under § 7405 is not the only remedy by which the Service may recover an erroneous refund. *See Brookhurst, Inc. v. United States,* 931 F.2d 554, 556–57 (9th Cir.), *cert. denied.,* 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 242 (1991); *Tucker v. United States,* No. 87 Civ. 3349, 1989 WL 58012, at *3–4 (S.D.N.Y. May 23, 1989). It may also use the Code's assessment provisions, which have a different limitations period. Section 6501(a) provides that the amount of tax imposed shall be assessed within three years after the filing of the return. If a tax has been assessed within this period, the Service may collect it by levy or court proceeding within ten years after the assessment. *See* § 6502(a).

The Service's papers show that it has assessed deficiencies against Janus for its disallowed credits in 1990 and 1991. It may set off Janus' refunds in this action against these deficiencies. The record does not show that the Service has made assessments for the

refunds erroneously issued in 1989. If the Service did so in a timely fashion, it may set off any refunds due to Janus against this liability.

### VI

Plaintiff's motion for summary judgment is denied. The Service's cross-motion for partial summary judgment is granted in part and denied in part as detailed above.

The government may have thirty days from entry of this order to submit documentation of such assessments against Janus as it made concerning the amounts it claims were erroneously refunded in 1989, and to submit computations showing the amounts of refunds allowed and disallowed in each quarter. Janus may file objections in the following thirty days.

So Ordered.