Bank of NH v. USA                    CV-99-343-M    07/25/00
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Bank of New Hampshire,
      Plaintiff

      v.                                 Civil No. 99-343-M
                                         Opinion No. 2000 DNH 163
United States,
      Defendant


                          **O R D E R**


      Bank of New Hampshire (the "Bank") brings this action

seeking a declaratory judgment as to the priority of its lien on

the accounts receivable of a third party.  It also seeks the

return of the cash proceeds of those accounts receivable, which

were collected by the Internal Review Service to satisfy that

third party's tax liabilities.  The United States moves to

dismiss on grounds that the Bank's amended complaint fails to set

forth viable claims and, even assuming some of those claims are

cognizable, that this court lacks subject matter jurisdiction.

See Fed. R. Civ. P. 12(b)(1) and (6).  The Bank objects.

**Standard of Review**

I.   Rule 12(b)(1) - Lack of Subject Matter Jurisdiction.

"When faced with a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), Fed. R. Civ. P., the party asserting jurisdiction has the burden to establish by competent proof that jurisdiction exists." Stone v. Dartmouth College, 682 F. Supp. 106, 107 (D.N.H. 1988) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982); C. Wright & A. Miller, 5 Federal Practice and Procedure § 1350, at 555 (1969 & Supp. 1987)).  Furthermore, the court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987); see also  Richmond, F & P R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).  But, the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of

material fact exists." Richmond, 945 F.2d at 768 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citing Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987)).

II. Rule 12(b)(6) - Failure to State a Claim.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted." Chasan v. Village District of Eastman, 572 F.Supp. 578, 579 (D.N.H. 1983). See also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 15 (1st Cir. 1989). "[D]ismissal is appropriate only if 'it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Roeder v. Alpha Industries, Inc., 814 F.2d 22, 25 (1st Cir. 1987)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**Background**

In its amended complaint, the Bank alleges the following facts which, for the purpose of this order, will be taken as admitted. In October of 1997, the Bank's predecessor in interest extended credit to Professional Transcription and Reporting Associates ("PTRA"). As security for that loan, the Bank acquired a security interest in all of PTRA's accounts receivable, as well as the proceeds of those accounts receivable. The Bank perfected its security interest by recording UCC-1 financing statements.

Beginning in 1997, and continuing into 1998, PTRA failed to make payroll tax payments to the Internal Revenue Service. As a result, a tax lien arose in favor of the IRS. See 26 U.S.C. §

4

6321.  See generally, United States v. National Bank of Commerce, 472 U.S. 713, 719-20 (1985).  According to the Bank's amended complaint, the IRS perfected its lien on February 10, 1999, by filing a Notice of Federal Tax Lien against PTRA.  Prior to that date, the Bank says that it had advanced PTRA (and was still owed by PTRA) approximately $50,000.

In late 1998, PTRA defaulted on its obligations to the Bank.  Rather than use the proceeds of its accounts receivable to pay the Bank, PTRA used those funds to pay its tax obligations to the IRS.  The Bank claims that all such payments to the IRS were made with the proceeds of the Bank's collateral.  In essence, it says that its property was used to satisfy PTRA's tax obligations.

The Bank claims that its security interest in PTRA's accounts receivable is superior to the tax lien perfected by the IRS.  See Amended Complaint at para. 17 ("Plaintiff's security interest has priority over the tax lien by virtue of 16 U.S.C. § 6323, as to all receivables and proceeds of contract rights of

[PTRA] at any time prior to 45 days after February 10, 1999.").

In its amended complaint, the Bank sets forth five claims against

the government, by which it seeks the return of monies generated

by its collateral:  judgment of lien priority (count 1); unjust

enrichment (count 2); conversion (count 3); wrongful levy (count

4); and taking of property without due process or just

compensation (count 5).


**Discussion**

I.   <u>Lien Priority - Count One</u>.

In count one of its amended complaint, the Bank seeks a

judicial determination that its security interest in PTRA's

accounts receivable is superior to the government's tax lien.

Ultimately, the issue presented by the Bank's claim is whether it

retained a security interest in the cash proceeds of PTRA's

accounts receivable once PTRA voluntarily turned those funds over

to the government.[1]

_____

[1]     The priority of the IRS tax lien on those assets would
seem to be of little moment at this point, since it appears that
the IRS never took any steps to foreclose upon that lien.

6

As an initial matter, the amended complaint makes it clear that the Bank did not perfect its security interest in the cash proceeds of PTRA's accounts receivable by taking possession of that cash. See N.H. Rev. Stat. Ann. ("RSA") 382-A:9-304 and 9-306. Had it done so, resolving the priority of its security interest against the government's claim would be a far simpler task. Nevertheless, notwithstanding its failure to take possession of those cash proceeds, the Bank might still have a security interest in them.

Because the Bank alleges that it obtained a security interest in PTRA's accounts receivable and any proceeds thereof, that security interest would follow the cash proceeds, provided: (1) those proceeds remain "identifiable"; and (2) they were paid to a third party (here, the IRS) either fraudulently or in a manner that was outside of the "ordinary course" of PTRA's

Instead, it simply accepted PTRA's voluntary payment of its outstanding tax obligations. Thus, the legal question presented by the Bank's amended complaint is whether the IRS took those payments from PTRA subject to the Bank's security interest.

7

business.  See RSA 382-A:9-306(2).  See generally Orix Credit Alliance, Inc. v. Sovran Bank, N.A., 4 F.3d 1262 (4th Cir. 1993); Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony, N.A., 897 F.2d 611 (1st Cir. 1990).  On the other hand, if PTRA discharged its tax obligations to the IRS in the ordinary course, with commingled funds from its operating account(s), the IRS took those funds free of the Bank's asserted security interest.  Comment 2(c) to section 9-306 of New Hampshire's Uniform Commercial Code makes this point clear:

> Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds.  What has been said relates to payments and transfers in ordinary course.  The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party.

RSA 382-A:9-306, comment 2(c).  Importantly, the Court of Appeals for the First Circuit has cautioned that "'ordinary course' has a fairly broad meaning; and . . . a court should restrict the use

8

of tracing rules to conduct that, in the commercial context, is rather clearly improper." In re Halmar Distributors, Inc., 968 F.2d 121, 129 (1st Cir. 1992) (quoting Harley-Davidson, 897 F.2d at 622). Imposing too narrow a definition on "ordinary course" might substantially complicate and even undermine routine commercial transactions.

> If, however, courts too readily impose liability upon those who receive funds from the debtor's ordinary bank account - if, for example, they define "ordinary course" of business too narrowly - then ordinary suppliers, sellers of gas, electricity, tables, chairs, etc., might find themselves called upon to return ordinary payments (from a commingled account) to a debtor's secured creditor, say a financer of inventory. Indeed, we can imagine good commercial reasons for not imposing, even upon sophisticated suppliers or secondary lenders, who are aware that inventory financers often take senior secured interests in "all inventory plus proceeds," the complicated burden of contacting these financers to secure permission to take payment from a dealer's ordinary commingled bank account.

Harley-Davidson, 897 F.2d at 622 (emphasis in original).

Critically, the Bank's amended complaint includes no allegation that PTRA's payments to the IRS were from

9

"identifiable" proceeds of the accounts receivable (as distinguished from funds taken from an account in which the proceeds of the accounts receivable were "commingled" with PTRA's other income). Nor does the amended complaint allege that the payments PTRA voluntarily made to the IRS in satisfaction of its outstanding tax obligations were either fraudulent or outside of the ordinary course of its business. Instead, the Bank merely alleges, "Commencing no later than December of 1998 and continuing into April of 1999, [PTRA] used the proceeds of accounts receivable and contract rights pledged to the Bank to pay tax liabilities to IRS, rather than to pay amounts due the Bank under [the security agreement between the Bank and PTRA]." Amended complaint at para. 9. Thus, the complaint alleges that PTRA simply elected to pay one of its creditors (the IRS) instead of another (the Bank), apparently from its general operating account.

In the absence of any allegation that PTRA's voluntary payments to the IRS were from "identifiable" proceeds of the

10

accounts receivable in which the Bank claims a security interest and were either fraudulent or outside of the ordinary course of business, the court is compelled to conclude that the Bank has failed to state a viable claim to those funds under New Hampshire's Uniform Commercial Code.  In other words, the Bank's amended complaint fails to support any claim that the Bank's security interest followed the funds PTRA turned over to the government.  See, e.g., Ford Motor Credit Co. v. State of New York, 641 N.Y.S. 2d 742, 743 (N.Y. App. Div. 1996) ("Claimant argues that the [tax] payments by [the taxpayer] were not in the ordinary course of [the taxpayer's] business and, therefore, the claim is sufficient to survive a motion to dismiss.  There can be little doubt, however, that [the taxpayer] incurred the sales tax liability in the ordinary course of business, and we see no reason not to consider [the taxpayer's] payments in satisfaction of a liability incurred in the ordinary course of its business as also in the ordinary course of its business.  Absent from the claim are any allegations to demonstrate that the payments were fraudulent conveyances or that the State acted in collusion with

11

[the taxpayer] to defraud claimant. In these circumstances, we conclude that as a matter of law the State took [the taxpayer's] payments free and clear of any claim by claimant.") (citation omitted) (emphasis supplied).

Accordingly, to the extent the Bank asserts that it retained a security interest in the cash proceeds of PTRA's accounts receivable after those funds were paid to the IRS, count one of the Bank's amended complaint fails to state a viable claim.

## II. Unjust Enrichment - Count Two.

In count two of its amended complaint, the Bank alleges that by "appropriating the proceeds subject to Plaintiff's prior security interest, defendant has been unjustly enriched." Amended complaint, at para. 19. In response, the government denies that is has been "unjustly enriched" by accepting PTRA's voluntary tax payments. And, even assuming such unjust enrichment, the government contends that sovereign immunity shields it from the Bank's unjust enrichment claim.

12

To the extent the Bank's claim for unjust enrichment is properly viewed as one sounding in tort, it must, as discussed more fully below, be dismissed due to the Bank's failure to comply with various requirements of the Federal Tort Claims Act (FTCA). See Section III, infra. However, the Bank suggests that its unjust enrichment claim is neither a tort (which would be barred by the FTCA) nor a claim based upon an implied contract (as to which the Tucker Act would arguably apply). See Plaintiff's objection at 5. Instead, it suggests that its claim is equitable in nature. See id. ("In our case, IRS has enriched itself at the expense of plaintiff, not by levy, but by appropriating proceeds on which plaintiff had a properly perfected and recorded prior lien. That is contrary to equity."). Accordingly, the court will address the assertion that the government has waived its sovereign immunity as to the Bank's equitable claim to the proceeds of accounts receivable that PTRA voluntarily turned over to the IRS.

It is well established that "the United States, as sovereign, may not be sued without its consent." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (citations omitted). Consequently, for a federal court to exercise subject matter jurisdiction over a party's suit against the government, that action must be brought in compliance with the specific conditions under which the government has agreed to waive sovereign immunity. See, e.g., Kuznitsky v. United States, 17 F.3d 1029, 1030 (7th Cir. 1994) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction. Although the government clearly may waive its sovereign immunity, any such waiver cannot be implied but must be unequivocally expressed.") (citation and internal quotation marks omitted). And, as the party invoking the court's subject matter jurisdiction, the Bank bears the burden of identifying the appropriate statutory waiver(s) of sovereign immunity. See Murphy, 45 F.3d at 522.

14

In support of its assertion that the government has waived its sovereign immunity, the Bank points to the Administrative Procedures Act (the "APA"), which provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or office or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis supplied). By its express terms, the APA does not waive the government's sovereign immunity with regard to claims seeking money damages. To avoid that potential bar against its claim, the Bank says that its suit against the government is not really for money damages. Instead, it suggests that its claim might well be construed as one seeking "monetary relief." See Plaintiff's objection at 9 (noting the distinction between actions for "money damages" and those for "monetary relief," and asking "[i]s it clear, particularly in our context,

15

that the takings claim is for 'money damages?'").  In support of the view that it is seeking a form of specific relief and, therefore, not barred by sovereign immunity, the Bank points to the Supreme Court's opinion in Bowen v. Massachusetts, 487 U.S. 879 (1988).

In Bowen the Supreme Court considered whether section 702 of the APA authorized the Commonwealth of Massachusetts to sue the Secretary of Health and Human Services to enforce a provision of the Medicaid Act that required the payment of certain sums to the Commonwealth for Medicaid services.  The Court concluded that in drafting section 702, Congress sought to distinguish between claims against the government for specific relief and those for substitute relief (in the form of monetary compensation).  Next, the Court held that the Commonwealth's suit was not one "seeking money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated; rather it [was] a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money."  Bowen, 487 U.S. at 900.

16

Consequently, the Court held that the Commonwealth's suit was one for specific relief rather than money damages and, as a result, fell within the scope of section 702's waiver of sovereign immunity.

In this case, however, the Bank is not seeking specific performance of any statutory or contractual obligation that the IRS might have to relinquish the funds to which the Bank lays its claim. Instead, the Bank seeks compensation for the damages it sustained when PTRA failed to make full and timely payments on its loan obligations to the Bank and, instead, elected to discharge its tax obligations to the IRS. Consequently, this case is more closely analogous to Department of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999). In Blue Fox, the plaintiff was a subcontractor on a government project who was not paid by the project's general contractor. It sought to enforce an equitable lien on any funds held by the Army and as yet unpaid to the project's general contractor. Like the Bank, the plaintiff in Blue Fox relied upon the Supreme Court's opinion in Bowen in

17

support of its view that section 702 waived the government's sovereign immunity.

The Court rejected the plaintiff's interpretation of <u>Bowen</u> and concluded that its efforts to obtain an equitable lien on funds held by the government were not within section 702's limited waiver of sovereign immunity.

> It is clear from <u>Bowen</u> that the equitable nature of the lien sought by respondent here does not mean that its ultimate claim was not one for "money damages" within the meaning of § 702. Liens, whether equitable or legal, are merely a means to the end of satisfying a claim for the recovery of money.

<u>Blue Fox</u>, 525 U.S. at 262. Consequently, the court held that the government was immune from the plaintiff/respondent's claim.

> We accordingly hold that the sort of equitable lien sought by respondent here constitutes a claim for "money damages"; its goal is to seize or attach money in the hands of the Government as compensation for the loss resulting from the default of the prime contractor. As a form of substitute and not specific relief, respondent's action to enforce an equitable lien falls outside of § 702's waiver of sovereign immunity.

18

Id., at 263.

In light of the Supreme Court's holding in Blue Fox, the Bank's unjust enrichment claim (as well as its takings claim, discussed below) does not fall within the scope of section 702's limited waiver of sovereign immunity. Properly viewed, the Bank's claim is plainly one for monetary damages, as compensation for the loss it sustained when PTRA defaulted on its loan. And, section 702 unambiguously provides a waiver of sovereign immunity only for actions in which the plaintiff seeks "relief other than money damages." 5 U.S.C. § 702 (emphasis supplied).

III. Conversion - Count Three.

In count three of its amended complaint, the Bank alleges that, "[b]y appropriating the proceeds subject to Plaintiff's prior security interest with knowledge of that prior interest, defendant has converted funds properly belonging to plaintiff." Amended complaint, at para. 22. This count of the Bank's amended

19

complaint must be dismissed for several reasons, at least two of which are readily apparent.

First, notwithstanding the Bank's arguments to the contrary, a claim of conversion is one sounding in tort. See, e.g., Claire Murray, Inc. v. Reed, 139 N.H. 437, 440 (1995); Thompson v. Forrest, 136 N.H. 215, 219 (1992); Leeper v. Leeper, 114 N.H. 294, 297-98 (1974). See also Kenerson v. Morgan Guar. Trust Co., 889 F. Supp. 523, 528 (D.N.H. 1995). To bring a tort claim against the United States, a plaintiff must comply with the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. Although that statute provides a limited waiver of the government's sovereign immunity, see 28 U.S.C. § 2674, it specifically provides that the government retains its sovereign immunity with regard to "any claim arising in respect of the assessment or collection of any tax." 28 U.S.C. § 2680(c). As a result, the Bank's tort claim for conversion must be dismissed, insofar as section 2680(c) expressly exempts from its waiver of sovereign immunity claims, such as the Bank's, that relate to the

collection of any tax.  See generally Interfirst Bank Dallas,

N.A. v. United States, 769 F.2d 299, 307-08 (5th Cir. 1985)

(rejecting the plaintiff's assertion that Congress intended

section 2680(c) to bar only those suits for which adequate

remedies were already available, as well as its claim that

section 2680(c) bars suits only by taxpayers and not those

brought by third parties who are adversely affected by the

government's tax collection activities).[2]


The Bank's conversion claim suffers from an additional

defect: the Bank failed to comply with the requirements of 28

U.S.C. § 2675, which provides:

> An action shall not be instituted upon a claim against
> the United States for money damages for injury or loss
> of property . . . unless the claimant shall have first

---

[2]     The facts presented in Interfirst Bank are similar to those presented in this case.  There, much as is the case here, a secured lender brought suit against the United States seeking the return of cash in which it claimed a security interest and alleging claims under 26 U.S.C. § 7426 (the Federal Tax Lien Act of 1966), the Federal Tort Claims Act, and the Due Process Clause of the Fifth Amendment.  The court rejected each of those claims.

presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). The United States Supreme Court has made it clear that a plaintiff cannot pursue an action under the FTCA unless all available administrative remedies are first exhausted. See McNeil v. United States, 508 U.S. 106 (1993). To do so, a plaintiff must present a written claim to the appropriate federal agency, which must then either actually or constructively deny the claim. See 28 U.S.C. §§ 2401(b) and 2675(a). Section 2675(a) provides that a claim is constructively denied if the agency fails to finally dispose of the claim within six months after it was filed. Here, however, the Bank concedes that its administrative claim was neither denied nor did the six month period lapse before it filed its FTCA claim against the government. See Plaintiff's objection at 7 (acknowledging that "it is certainly true that the claim was not formally denied

22

. . . and that six months did not elapse between presenting this administrative claim and the start of this suit . . .").

Should a plaintiff file suit under the FTCA prior to the agency's actual or constructive denial of his or her claim, it is subject to dismissal for lack of subject matter jurisdiction. This is true even if the agency subsequently denies (either actually or constructively) the administrative claim, after the plaintiff files his or her federal suit. See McNeil, 508 U.S. at 111-12. See also United States v. Burzynski Cancer Research Institute, 819 F.2d 1301, 1306 (5th Cir. 1987); Salvador v. Meese, 641 F. Supp. 1409, 1418 (D.Ma. 1986). Accordingly, the Bank's conversion claim against the United States was filed prematurely and, even if there were a valid waiver of sovereign immunity, it would still be subject to dismissal for lack of subject matter jurisdiction.

IV.  Wrongful Levy - Count Four.

Section 7426 of Title 26 provides the exclusive means by which parties claiming an interest in property sold pursuant to a tax levy may recover that interest.  See, e.g., Williams v. United States, 947 F.2d 37, 39 (2d Cir. 1991) ("The sole remedy available to an individual such as Williams, who claims an interest in property that has been levied upon by the IRS for the purpose of satisfying the tax liability of another person, is a wrongful levy action asserted under 26 U.S.C. § 7426(a)(1)."). That statute provides, in pertinent part:

> **Wrongful levy.**  If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1).  Courts that have addressed the issue, have carefully distinguished between voluntary tax payments and those made pursuant to a levy.  For example, the Court of Appeals for the Fifth Circuit has observed:

24

> A "levy" is defined in 26 U.S.C. § 6331(b) as "the power of distraint and seizure by any means" - a definition which connotes compulsion. This is confirmed by the structure of Section 6331 as a whole, which distinguishes between assessment and demand on the one hand and a levy on the other. . . . This distinction would make little sense if assessment, demand, and voluntary payment were tantamount to a levy. It clearly contemplates that a levy is a forcible means of extracting taxes from a recalcitrant taxpayer.

Interfirst Bank, 769 F.2d at 304-05. See also State Bank of Fraser v. United States, 861 F.2d 954, 958 (6th Cir. 1988).

The government claims that all tax levies made against assets of PTRA were released prior to PTRA's voluntary payment of its tax deficiencies (and well prior to the filing of this suit). See Exhibits A through D to the government's motion to dismiss.[3]

---

[3] The government acknowledges that notice of a tax levy against the assets of PTRA was delivered to the Bank in October of 1998. However, the Bank responded that it held no assets of PTRA and, therefore, the IRS collected no funds with respect to that levy. Moreover, that levy cannot be the subject of the Bank's suit because the nine month period of limitations has lapsed. See 26 U.S.C. § 6532(c). See also Denham v. United States, 811 F. Supp. 497, 502 (C.D. Cal. 1992).

25

Given the government's unrefuted submissions, the court concludes that the payments made to the IRS by PTRA were not in response to a tax levy.[4] Instead, those payments were made voluntarily. Consequently, in the absence of a levy, the Bank's claims against the government do not fall within the scope of section 7426. See Nickerson v. United States, 513 F.2d 31, 33 (1st Cir. 1975) ("This construction [that § 7426 reaches only 'existing' levies] derives support from the fact that the exclusive remedies of subsection (b) seem to contemplate an existing levy. Mindful of the principle that waivers of sovereign immunity are to be strictly construed, we believe that the district court correctly held § 7426 inapplicable.") (citation omitted). See also Interfirst Bank, 769 F.2d at 306 ("Since Section 7426 does not expressly permit suits such as Interfirst's, where the taxpayer

_____

[4] The Bank challenges the right of the government to attach exhibits to its motion to dismiss, claiming that it is only appropriate to submit such materials in the context of a motion for summary judgment. The court disagrees. As noted above, a party moving to dismiss a complaint for lack of subject matter jurisdiction may reference documents outside the pleadings, without converting its motion into one for summary judgment.

26

voluntarily surrendered its property to the IRS, this section does not waive the government's immunity in the present case."); Denham v. United States, 811 F.Supp. 497, 501 (C.D. Cal. 1992) ("Thus, in the present case no levy occurred because Plaintiff voluntarily made a payment to avoid IRS enforcement of its tax liens. . . . [T]he tax liens on Plaintiff's house did not transform her payment into a levy.").

Because PTRA's payments to the government were not collected pursuant to a levy, the Bank has no claim against the government for wrongful levy under section 7426.

V.    Unconstitutional Taking - Count Five.

Finally, in count five of its amended complaint, the Bank alleges that the government's acceptance of the proceeds from PTRA's accounts receivable in satisfaction of PTRA's tax liability unconstitutionally deprived the Bank of due process and just compensation.  In response, the government says that its acceptance of those funds does not amount to an unconstitutional

27

"taking" of the Bank's property.  And, even assuming such a taking occurred, the government contends that the court lacks subject matter jurisdiction over the Bank's claim because it has not waived its sovereign immunity.

The Bank seems to suggest that claims against the government involving the collection of taxes in which the plaintiff alleges an unconstitutional taking need not be supported by any specific waiver of sovereign immunity.  Instead, says the Bank, under circumstances such as those presented in this case, such a waiver is implicit in the Constitution itself.  Unfortunately, the Bank has provided no citations to pertinent authority (whether binding or even persuasive) that supports its view.  And, as noted above, as the party invoking this court's subject matter jurisdiction, it is the Bank's obligation to demonstrate that jurisdiction exists.

Although the precise source of the court's subject matter jurisdiction over the Bank's constitutional claim is unclear, it

is conceivable that the Bank believes the court is vested with such jurisdiction by virtue of 28 U.S.C. § 1331. That statute provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Alternatively, it is possible that the Bank relies upon the provisions of 28 U.S.C. § 1346(a) as the source of this court's jurisdiction over its Fifth Amendment claim. That statute provides, in pertinent part, as follows:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> (1) Any civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . ..
>
> (2) Any other civil action of claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation or an executive department, or upon any express or implied contract with the United States . . ..

29

28 U.S.C. § 1346(a)(1) and (2). What is clear, however, is the Bank's belief that it need not identify any specific waiver of sovereign immunity in order to proceed against the government on its takings claim. See Plaintiff's objection at 8 ("A constitutional takings claim must by its own force be cognizable without a separate waiver of sovereign immunity, else the Fifth Amendment right itself would itself be subject to Congressional whim."). The Bank's point is, at least in part, well taken.

The Court of Appeals for the Federal Circuit addressed this issue in detail in Broughton Lumber Co. v. Yeutter, 939 F.2d 1547 (Fed. Cir. 1991). There, as here, the plaintiff asserted that the "takings" clause in the Fifth Amendment is "self-executing" insofar as "there need be no other statutory authority for a party to assert a right to just compensation where the government action results in an acquisition of property for public use." Id., at 1556. The court of appeals agreed. However, it went on to conclude that, notwithstanding the "self-executing" nature of

the takings clause, the district court lacked jurisdiction over the plaintiff's claim.

> As a result of the "self-executing" nature of the "takings" clause, [plaintiff's] argument may, at first, appear reasonable that as a claim founded upon the Constitution, jurisdiction has been vested in the federal district courts over "takings" claims under [28 U.S.C.] section 1331. The language found in section 1331 . . . is not the end of the matter, however, for it does not exist in a jurisdictional vacuum. Other statutes affecting a district court's jurisdiction over claims against the United States were in effect long prior to the broad grant of jurisdiction to district courts provided in section 1331, namely the Tucker Act . . . and the Little Tucker Act. Thus, whether a "takings" claim, asking for an award of just compensation from the United States, may be brought in district court pursuant to section 1331 requires recognition of the Tucker Act and the Little Tucker Act and reconciling section 1331 with these statutes.

Id. (citations omitted). Ultimately, the court concluded that "a claim based on the 'takings' clause for a monetary amount exceeding $10,000 may not be brought in district court pursuant to section 1331." Id. The court observed that accepting the plaintiff's view "would have the result of permitting suit in district court on any claims founded upon the Constitution or a statute regardless of the dollar amount of relief requested,

though a specific statute limits concurrent jurisdiction over claims against the United States based on the Constitution or a statute to those which do not exceed $10,000." Id., at 1557. Consequently, the court rejected the plaintiff's argument, concluding that its "theory would emasculate the $10,000 limit for a claim to be brought in district court if founded upon the Constitution or a statute." Id.

On related grounds, the Court of Appeals for the Seventh Circuit rejected a takings claim similar to the Bank's, concluding that: (1) the general grant of jurisdiction set forth 28 U.S.C. § 1331 does not waive the government's sovereign immunity; and (2) while 28 U.S.C. § 1346(a)(1) grants district court's original jurisdiction over claims against the United States for the recovery of erroneously collected taxes, only taxpayers (and not, for example, their creditors) may avail themselves of that statute.

> The general jurisdiction statute, 28 U.S.C. § 1331,
> permits a district court to grant declaratory judgment
> in a "takings" claim, but does not waive the

government's sovereign immunity to suit for compensation. The Little Tucker Act, 28 U.S.C. § 1346(a)(2) does waive sovereign immunity, but only for compensation not exceeding $10,000.

[Plaintiff] first asserts the district court has original subject matter jurisdiction over "takings" cases which concern taxes under 28 U.S.C. § 1346(a)(1), regardless of the amount of compensation sought. Section 1346(a)(1) grants the district court original jurisdiction over "any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected."

This court has previously ruled that only persons legally liable for paying a given federal tax may bring a refund suit under this section. . . . Absent explicit language to the contrary, a waiver of sovereign immunity must be narrowly construed. [Plaintiff] has not persuaded us that there is any reason to change our reading of this statute.

Pershing Div. of Donaldson, Lufkin & Jenrette Securities Corp. v. United States, 22 F.3d 741, 743 (7th Cir. 1994)(citations omitted).

Here, the Bank was not the party from whom the tax was collected. Instead, it was one of the taxpayer's creditors. As such, it lacks standing to sue the government under § 1346(a)(1)

to recover the sums that it says were wrongfully collected from PTRA.  See Id.  See also Murray v. United States, 686 F.2d 1320, 1325 n.8 (8th Cir. 1982) ("Standing to sue under Section 1346(a)(1) extends only to the taxpayer from whom the tax was allegedly wrongfully collected."); Janus Petroleum Co. v. United States, 915 F. Supp. 556, 558 (E.D.N.Y. 1996) ("Ordinarily only a party legally liable for a tax may bring suit for a refund under 28 U.S.C. § 1346(a)(1)."); United States v. Raytown Lawnmower Co., 763 F. Supp. 411, 413 (W.D. Mo. 1991) ("Only a taxpayer from whom the tax was allegedly wrongfully collected, however, has standing to sue under section 1346(a)(1).").

Thus, to the extent the Bank asserts that this court may, pursuant to either 28 U.S.C. § 1331 or 28 U.S.C. § 1346(a), properly exercise subject matter jurisdiction over its takings claim against the government, the court disagrees.  Finally, to the extent the Bank claims that under the Supreme Court's opinion in Bowen, section 702 of the Administrative Procedure Act waives

the government's sovereign immunity, for the reasons set forth above, the court again disagrees. See Section II, supra.

In the absence of any citations by the Bank to contrary authority, the court necessarily concludes that the Bank's constitutional claim against the government is barred by the doctrine of sovereign immunity. Consequently, count five of its amended complaint must be dismissed for lack of subject matter jurisdiction.

**Conclusion**

For the foregoing reasons, and for the reasons set forth in the government's motion to dismiss and its reply to plaintiff's objection (document no. 15), the government's motion to dismiss (document no. 12) is granted and the Bank's amended complaint is dismissed. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 25, 2000

cc:  Frank P. Spinella, Jr., Esq.
     Paul M. Gagnon, Esq.
     Lydia D. Bottome, Esq.